# SUPERIOR COURT OF BALTIMORE CITY.

Filed October 5, 1928.

CHARLES E. MOORE
VS.
MASSACHUSETTS ACCIDENT COMPANY.

*W. Calvin Chesnut* and *S. Ralph Warnken* for plaintiff.

*Randolph Barton, Jr.,* and *Howard A. Sweeten* for defendant.

DENNIS, C. J.—

This is a suit brought by Charles E. Moore against the Massachusetts Accident Company to recover under a health and accident policy dated August 4, 1919, which contained no cancellation clause.

The provisions of the policy of interest in this case are:

### Part I. Total Accident or Illness Disability.

If the insured suffers a disability from accidental injury or disease which necessarily, wholly and continuously disables him from the performance of any and every kind of duty pertaining to his occupation or business, the company will pay a weekly indemnity at the rate of fifty dollars per week, during the continuance of such disability until such time as the insured may engage in a *gainful occupation*, but no indemnity shall be payable for the first two weeks of disability, as above described.

### Part II. Partial Indemnity Following Total Disability.

If the insured suffers a disability for which indemnity is payable under Part I, and if immediately following such a disability during which the insured is entitled to be paid indemnity, the insured is able to engage in a *gainful occupation*, but on account of the continuation of disability is necessarily and continuously partially disabled and suffers a loss of business time, the company will pay as follows:

(a) For such time as the insured suffers a partial disability as defined above and because thereof, sustains a three-quarters loss of his business time, the company will pay a weekly indemnity at the rate of seventy-five per cent. of the weekly indemnity provided for total disability.

Then follow two clauses (b) and (c), precisely like clause (a) quoted above, whereby upon a 50% or 25% loss of time the weekly indemnity to the insured would be correspondingly reduced.

The premiums were paid, and the usual claims and proofs of disability furnished.

In 1920, Mr. Moore had nervous prostration. A year or so later, after undergoing treatment in a sanitarium, he recovered sufficiently to take up his work again as a commission merchant in the tobacco business. Later, in addition to the tobacco business, he took

on an automobile business and a paper business, the latter being a corporation.

About September, 1926, Mr. Moore was grossly over-wrought and distressed about his business enterprises, which were in straits, became nervous and sleepless, and again broke down. His trouble was "a typical case of melancholia."

The insurance company paid Mr. Moore the weekly indemnity of $50 per week, in full, under the policy without complaint for a long time, as it was undisputed that he was then too ill to engage either in his tobacco business or any other gainful occupation.

During his illness his three business enterprises languished and died.

After visiting many places and consulting many physicians seeking a cure, Mr. Moore finally did improve somewhat.

He was born in 1872, and to outward appearances is robust physically. The testimony of several doctors and friends is to the effect that he is still an ill man. The nature of his complaint "melancholia" considered, it is easy to understand how he may look well though disabled mentally.

The insurance company finally concluded that Mr. Moore's enervation and complete withdrawal from all semblance of work at any *gainful occupation* was due to the benefits of $50 per week, rather than illness. It declined to pay any longer. Mr. Moore sued in this case to recover the maximum sick benefits from August 24, 1927, to December 7, 1927, amounting to $750. The Court understands that the defendant says the benefits should be reduced, but does not deny some liability under the policy.

This case was tried before the Court sitting as a jury. Other cases of a similar nature covering different periods the Court understands are pending.

Dr. Gibson Porter, who had regularly attended Mr. Moore for many years, and who treated him reguarly during the period covered by this suit, testified that Mr. Moore was unable to do any sort of work. Dr. Thomas B. Futcher examined Mr. Moore during the period and was almost as decided in his judgment. Dr. Cary B. Gam-

ble, on behalf of another insurance company, examined Mr. Moore, and his opinion that Mr. Moore was unfit to do any sort of gainful work was positive. Mr. and Mrs. Moore and Mr. Moore, Jr., testified to facts known generally to Dr. Porter and Dr. Futcher, tending to show that Mr. Moore require verinol frequently, was highly nervous, sleepless, irritable, depressed and incapable of sustained mental strain.

The defendant proved that Mr. Moore played golf quite regularly once for nine hours in one week, drove an automobile from Baltimore to the suburbs of Philadelphia, played bridge regularly and well for stakes, was marshal of the golf course during a tournament, and spent a large share of his time at his club amusing himself. None of these avocations apparently disagreed with him. It was also proved that Mr. Moore cut the small grass plot and trimmed the hedge about his home.

These occasional and light tasks apparently did disagree with him.

The insurance company's adjuster plainly suggested that Mr. Moore could do whatever he wanted to do, and the reason he did not work was because he did not will to work.

It appears that Dr. McCleary, while agreeing that Mr. Moore had melancholia, after conducting his examination of the plaintiff at the request of the defendant, thought that Mr. Moore was able to work part time, at least, and recommended he get a job; that light work might do him good and might not; that no one could tell. As a further experiment looking toward a restoration of Mr. Moore's *will* to work, he recommended that the defendant company discontinue payments. The experiment tried, and resulted in a set back for Mr. Moore.

It is clear that Mr. Moore (his former business enterprises no longer existing), has made but little, if any, real effort to seek or do work of any sort.

Should the Court find as a matter of fact that Mr. Moore may engage in some gainful occupation based upon the evidence of Mr. Moore's ability to play golf, cards, etc., plus his appearance—that of a hale, hearty man—and his demeanor on the stand, and Dr. McCleary's testimony that Mr. Moore has recovered sufficiently to en-

gage part time, at least, if he would, in *some gainful* occupation? If yes, the result would be a reduction of the weekly indemnity of $37.50, or perhaps even less.

The defendant insists strenuously that the Court must find (applying the rule of common sense), from the undisputed evidence that Mr. Moore can follow a golf ball three hours at a time, spend hours concentrating upon a bridge game, drive an automobile through city traffic a long distance, etc. (notwithstanding the *opinion* of eminent and honorable examining physicians to the contrary), that he is necessarily able physically and mentally to engage at least 2 hours a day (or ¼ time) in some "gainful occupation." And the defendant urges as a matter of law that such "gainful occupation" may perhaps be humble and mechanical, not comparable in dignity, congeniality, and importance to Mr. Moore's earlier business career, but any work bringing returns however insignificant. If so, the payments under the policy must be automatically reduced.

The plaintiff argues that the contract is not to be measured by Mr. Moore's mere ability by an act or acts of sacrifice or heroism to work if it kills him, or even if it be to the prejudice of his health; nor by his ability, without prejudice to his health, to do *occasional, irregular or trivial jobs*; nor by golf and cards to seek diversion and relaxation as an incident to his medical treatment; that the words used in the contract connote the ability to take up an occupation that offers an element of regularity and continuity, and is of some appreciable commercial significance, which Mr. Moore may do with reasonable regard to his heath and ultimate recovery.

The Court of Appeals of Maryland has never construed the words "gainful occupation," as used in this sort of contract.

No attempt was made to prove that Mr. Moore is able to resume any part of his former duties in his commission or other businesses, even if they existed.

As has been suggested, the most favorable proof for the defendant would be the inference drawn from testimony in re Moore's golf playing, etc., that he must be fit to do some work at something or another yielding some financial return.

Hence it is proper to determine in order to pass upon defendant's prayers, what is meant by Mr. Moore's ability to engage in "gainful occupation," both his physical and mental capabilities being considered. McMahon vs. Supreme Council, 54 Mo. 468.

The cases fall very naturally into two classes as a rule.

First: Wherein the policy provides benefits if the insured is permanently incapacitated, etc., from transacting the duties incident to his own occupation, that is to say, his occupation when the injury or illness occurred.

Second: Wherein the policy has the added provision as here, that the insured's benefits automatically decrease with increasing ability to engage in work.

The diversity of judicial opinions is illustrated by the following citations:

Fogelsong vs. Modern Brotherhood, etc., 97 S. W. 240.

The words "permanent and total disability which renders insured unable to carry on or conduct any vocation or calling" held to mean the vocation or calling insured followed when disabled, and that insured's ability to direct to some extent the business of farming and to do some work himself is not a defense under the policy.

B. & O. Rel. Asso. vs. Post, 15 Atl. 886.

The Supreme Court of Pennsylvania held that "total inability to labor" does not mean inability to labor at the same occupation, but if the member is able to work at other employment the benefits do not accrue.

Albert vs. Order of Chosen Friends, 34 Fed. 721. (Nisi prius decisions.)

The Court held the words "permanently disabled from following his usual or *other occupations*" not to mean other occupations of the same kind, and the holding was against one *working at another totally dissimilar occupation.*

Aetna Life Ins. Co. vs. McCullahh (Ky.), 241 S. W. 836.

Held that inability to work for more than 15 minutes at a time constitutes total disability.

Taylor vs. Southern States Life Insurance Company, L. R. A. 1917C-910.

There a farmer was not able to do the usual farming work, but he was able to drive a team, feed the cows, run a small dairy with the help of a boy and make arrangement for farming purposes. The Court held him to be wholly incapacitated.

Metropolitan Life Insurance Company vs. Bovello, Court of Appeals of the District of Columbia, 12 Fed. (2d) 810.

This case adopts the statement by Cooley Briefs on Ins., 2d Ed., to the effect that total disability exists if it is such that common care and prudence require him to desist from transacting business in order to effect a cure.

Life & Casualty Ins. Co. vs. Jones, 112 Miss. 506.

Under a policy entitling insured to benefits so long as he was "unable to do work of any kind," as soon as insured is able to do some work, either light or heavy for which he is fitted by nature, experience or training the insurance company is relieved.

Lee vs. N. Y. Life Ins. Co. (N. C.), 125 S. E. 186.

The language "wholly incapacitated * * * from engaging in any avocation whatsoever for remuneration or profit" held to mean incapacity to engage in any avocation for remuneration or profit, whether actually remunerative or profitable. The following activities held as "avocation for remuneration or profit"—paying off hands, and attending directors' meeting at bank, continuing in active charge of farm, managing labor, marketing crops, etc., with profit, and enough to defeat recovery under the policy. Not so merely attending bank directors' meeting.

Beeckner vs. Jefferson, 90 S. E. 897.

The words "gainful occupations" were held to mean that where a fireman on a railroad lost one hand he was not for that reason thereby prevented from performing all occupations, although he could not again fire a locomotive.

Parthen vs. Jefferson Standard Life Ins. Co., 117 S. E. 772.

Insured thrown by a mule, leg broken. The words "gainful occupation," citing 90 S. E. 897, "construed as expressed, and the liability of the insurer thereunder will not be extended so as to include a total disability of the insured to perform his trade or vocation, when other gainful occupations are still open to him."

Lyon vs. The Ry. P. Ass. Co., 46 Iowa 633.

The words "totally disabled and prevented from the transaction of *all kinds* of business" * * * cannot mean that defendant will indemnify plaintiff on account of loss sustained by being *partially* disabled from *some* kinds of business.

Starling vs. Royal Templars, 108 Mich. at 443.

The Court said: "The fact that a man may carry a bucket of coal, or may carry a stick of wood, or perhaps may run a lawn mower over a lawn, will not in itself necessarily show that he is competent to follow some avocation. The fact that a man may work for a few moments, even though, perhaps, he may work for a few months, will not necessarily, it is not conclusive evidence that he can follow some avocation. But if you find that he can perform some kind of employment—if you find as suggested * * * that he could keep a peanut stand or a newspaper stand or could do any work or follow any line of employment * * * he would not then be entitled to recoved." The plaintiff in that case was a leather cutter in a shoe factory.

Hurley vs. Banker's Life Co., 199 N. W. 343.

The Court held "that a farmer by loss of leg was not prevented from performing any work or following any occupation for compensation for profit.

It appears to this Court, selecting the better considered and more reasonable findings from the aforegoing conflicting expressions of the Courts, and after examining all the authorities referred to by counsel on both sides:

(1) That the word "occupation" used in the contract must be given its ordinary, natural and usual meaning, viz: "one's regular, principal or immediate business"; and

(2) That likewise the word "gainful" must be construed as ordinarily understood—that is something "yielding profit, lucrative," and thereby connoting something more than a mere

nominal compensation. Hence to engage in a "gainful occupation" means to work *regularly* for some wage or salary which is sufficient to gratify the definition of "yielding profit, lucrative," thereby excluding mere nominal wages; and

(3) That the authorities are fairly uniform in sustaining the view that Mr. Moore, in the instant case, has no right to claim full indemnity if he can work even one-fourth of his time at any sort of "gainful occupation," whether in the line of, or in connection with, his former business, or in a totally different employment of less dignity and responsibility than his old work; *provided*, that it be work for which he is fitted by nature, experience or training, and is of sufficient commercial importance to yield an appreciable financial return at least, even a return of some real commercial significance, as distinguished from a trivial or mere nominal return; *and, provided,* always, that such work may be done by him with reasonable regard to his mental and physical condition, and without prejudice to his present condition or prospect of future improvement or recovery.

(4) The authorities are fairly in accord to the effect that each case must stand or fall upon its own facts, and that no rule of uniform or universal application can be framed defining what circumstances or activities measure up to or as indicative of the ability to engage in any "gainful occupation."

Finally, in the instant case the Court, sitting as a jury, bearing in mind that Mr. Moore's trouble is not with his bones or muscles, but is entirely mental, has no difficulty in finding that, notwithstanding Mr. Moore can play golf or cards, etc., that the preponderance of the evidence favors the proposition that during the period in suit he was unable to engage in any gainful occupation for even one-fourth his time. There is a wide distinction between the discipline and strain of performing regular duties systematically, however light, and playing golf or cards for amusement, if, as and when he felt like it, with no obligation to keep on when weary or nervous.

The Court will refuse the defendant's first and second prayers, being demurrers to the evidence, and the defendant's third, fifth, sixth, seventh, ninth, tenth, eleventh, twelfth, thirteenth, fifteenth and sixteenth prayers.

The Court grants the defendant's fourth, eighth and fourteenth prayers after amending the same to cover the proposition that in addition to the elements expressed therein there should be added the idea that reasonable regard must be had for the effect upon Mr. Moore's health if he works at any gainful occupation.

The verdict of the Court is for the plaintiff, and for the amount claimed, $750, with interest, $35.75, making a total verdict for $785.75.

The Court will allow the plaintiff's counsel a fee of $50, inasmuch as suit was brought under the Act and the whole amount was disputed.

Exceptions are allowed defendant on all adverse rulings of the Court on its prayers.