ROBERT H. LEE v. NEW YORK LIFE INSURANCE COMPANY.

(Filed 12 November, 1924.)

**1. Insurance, Life—Policy—Contracts—Provisions as to Disability—Evidence—Questions for Jury.**

A provision in a policy of life insurance waiving the payment of premiums in the event of permanent and continuous disability to engage in any occupation of the insured for remuneration or profit, and for the yearly payment of a certain per cent of the face value of the policy, etc., is not confined to the ability of the insured to continue in the occupation he had previously followed, but any other occupation for remuneration or profit, and where the evidence is conflicting thereon, a question is presented for the determination of the jury.

**2. Same—Instructions.**

In this case there was evidence tending to show that the insured was a farmer, and had taken out a policy of life insurance with a provision waiving the payment of premiums and providing for a payment to him of a certain per cent of the face value of the policy in the event he should become permanently and continuously disabled to pursue any occupation for remuneration or profit, and that he had developed tuberculosis that rendered him incapable of attending to his farm or pursuing any business occupation, though his son to whom he had turned over the complete management of his farm would occasionally talk to him about it, and that at times he would attend meetings of the board of directors of a bank of which he was a member, and listen to the discussion of business transactions before it, for which there was a payment made of $2.00 for each meeting so attended, etc. *Held*, in his action to recover under the disability clause, the question of the defendant's liability was properly submitted to the determination of the jury; and *Held, further*, the charge of the court was free from reversible error under the facts of the case.

**3. Same.**

A charge of the court to the jury will be presumed to have been understood in its connected or related parts, and will not be *held* for reversible error if it thus explains correctly the law arising from proper evidence in the case, though taken disconnectedly it may be subject to criticism.

**4. Same—Evidence.**

Under the facts of this case tending to show conditions exactly similar: *Held*, evidence that a life insurance company had knowingly waived the collection of premiums for a while under a disability provision of its policy, is competent in the insured's action to recover the premiums he had afterwards been required to pay by a position the company had afterwards taken to the contrary.

CIVIL ACTION tried before *Daniels, J.*, and a jury, at Spring Term, 1924, of PAMLICO.

The action is on two life insurance policies in defendant company for $10,000.00 each, bearing date respectively in September, 1916, and

September, 1917, and each containing a clause insuring against "entire and permanent disabilities of the insured," the recovery sought being on these clauses of the policies for the year 1923. The stipulations of the policies directly pertinent to the inquiry are as follows:

"That whenever the company receives due proof before default in the payment of premiums, that the insured has, subsequent to the delivery of said policy, become wholly disabled by bodily injury or disease, so that he is and will be presumably thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then existed for not less than sixty days, the payment of premiums will be waived.

"If the disability occurred before the insured attained the rated-up age of sixty years, commencing with the anniversary of the policy next succeeding the receipt of such proof, the company will on each anniversary waive payment of premium for the ensuing insurance year, and in any settlement of the policy, the company will not deduct the premium so waived.

"The policy further provides, one year after the anniversary of the policy next succeeding the receipt of such proof, the company will pay the insured one-tenth (1-10) of the face of the policy, and a like sum on each anniversary thereafter, during disability until the face of the policy has been paid."

There was evidence offered on the part of plaintiff tending to show that in 1918, he had a severe attack of influenza which caused or developed into tuberculosis, which practically invalided plaintiff, rendering him "wholly unable to work and engage in any occupation for remuneration or profit." That he frequently suffers from hemorrhages from the lungs, stomach and intestines, and any ordinary exertion was liable to bring them on and that he continued in such a weakened condition that he was unequal to any sustained effort, physical or mental, and did nothing but lie around doing practically nothing. That in the years 1920, 1921 and 1922, his condition was such that defendant company recognized that plaintiff had a valid claim under these clauses of the policy, and waived the premiums and paid the ten per cent as stipulated without protest, but that in 1923, defendant refused to pay further, and plaintiff, to avoid any possible forfeiture, had paid the premiums due, under protest, to the amount of $811.35, and sues to recover the same, together with the ten per cent for the year 1923. That plaintiff's condition was much worse in 1923 than at any previous time, his hemorrhages more severe and more frequent, and that any mental effort or worry would throw him in bed. That he had given up his farm on which he had formerly worked and was wholly disabled by his disease, and continuously and in all probability permanently prevented

from engaging in any occupation whatsoever for remuneration and profit within the terms and meaning of the policies.

There was evidence for defendant tending to show that while plaintiff had suffered from tuberculosis, and of a very active type, that the indications were that the same had been arrested, and though totally disabled from doing manual labor, that mentally there was no impairment of plaintiff, and there was no reason why he could not manage his farm and give proper directions about it or do other business of an advisory kind. On cross-examination two of these witnesses said that mental effort might have a tendency to break one down.

It was also shown that during the year 1923, he had on two or three occasions attended directors' meetings of a bank, for which he was. allowed two dollars per meeting, and that he had looked after other transactions of a personal kind, including some litigation affecting his private interests. Further, that during said year he had arranged for the building of a house, paying off the hands himself and giving the matter a general oversight.

In reply, and as to building the house, Hardy Keel, a witness for plaintiff, testified as follows: "I have known R. H. Lee all his days and I have recently, built a house for him. Some weeks maybe he would come three or four times a week and then maybe he would not come at all, and one time he did not come in three weeks. He said he was sick. His son would come up sometimes and he said his father was sick. One day, I was at work by myself and in getting the flooring up it seemed to be spring and he picked up a piece of scantling and when he pulled up I hit it and it gave him a jar and looked like it put him out of business; he went out and came back and said the jar had given him a hemorrhage and it was about a week he did not show up. The little jar he received would not have affected a man of ordinary strength. From appearances he don't seem to be able to work but I have not noticed any dimunition of his mental activity. He hired his labor by the day to build his house. He asked me if I would take it in charge, he was not able to look after it. I took it in charge and ran it all the way through."

And as to attending the directors' meeting, plaintiff testified that he had attended two or three meetings, being unable to attend the others; that he had asked to be turned off because he was unable to attend, and did not understand that he was on the loan committee of the bank; "that he was unable to drive a car and that any one not dead could go to a bank and listen to what was said," etc.

On this conflicting evidence the cause was submitted to the jury and verdict rendered on the following issue: "Was the insured during the year 1923, wholly incapacitated by bodily injury or disease so that he

was thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit at all times during said year? Answer: 'Yes.' " Judgment on verdict for plaintiff, and defendant excepted and appealed, assigning errors.

*Z. V. Rawls for plaintiff.*
*James H. Pou, Moore & Dunn for defendant.*

Hoke, C. J. Under a correct and comprehensive charge, in which the positions of the respective parties and the pertinent evidence were fully and fairly stated, the jury has rendered its verdict for plaintiff, and we find no reason for disturbing the results of the trial. On the determinative question as contained and presented in the issue, the court, among other things, charged the jury as follows:

"Now, you will want to know what is meant by the language in the contract 'wholly incapacitated and thereby permanently and continuously prevented from engaging in any avocation whatsoever for remuneration or profit.' It does not mean merely that this disability may incapacitate him from pursuing his usual avocation, from working on his farm with his hands, but that it must incapacitate him from engaging in any avocation for remuneration or profit. One of the illustrations in the books is that where a man was an engineer and was injured and claimed to be wholly incapacitated, and the court held that the fact that he was incapacitated for running an engine would not be sufficient where it appeared he was not incapacitated for engaging in other avocations from which he might secure remuneration or profits.

"Our courts hold that the act shall be in force as it reads and that the insured cannot recover because totally disabled for his own trade or business, if he retains health, strength and physical ability sufficient for the pursuance of other avocations by which he might engage for profit or remuneration.

"It would not be necessary that the business in which he engages should actually be profitable or remunerative and he would have to take the risk that all men take in things of that sort, and the test would not be whether he could have actually made a profit. If it was such a business that he was able to engage in it in the expectation of profit or remuneration.

"Now, the fact that the plaintiff had somebody to build him a house by the day and that he was up there and paid off the hands would not constitute an avocation for profit or remuneration, nor would his attending meetings of the board of directors. These circumstances are testified to and brought to your attention by witnesses for the purpose of enabling you to see the whole situation and determine for yourselves whether he

was wholly incapacitated. He contends that he had to turn over his farm to his son, because he was wholly incapacitated to do the work, and the son testified that he was in charge and has had charge of it for two or three years, and that while he advised with his father when he is at the house and tells him what he is doing, his father does not control and direct him.

"Now, as I say, if the evidence satisfies you by its greater weight, the burden being upon the plaintiff, that during the year 1923, he was wholly incapacitated by reason of disease so that he was thereby prevented from engaging in any avocation for remuneration or profit, you would answer this issue 'Yes,' otherwise you would answer it 'No,' and if you should find from the evidence that during this time, the year 1923, the plaintiff has been engaged in a remunerative avocation, then he would not be entitled to recover, and you would answer the issue 'No.'

"I charge you further if you find the plaintiff was engaged in farming before any disability occurred and had ceased to do manual labor, but has since that time, during the year 1923, been in active charge of his farm, managing the labor, marketing the crops and otherwise handling the same, as is the custom of well-to-do farmers, that he has been attending actively the meetings as a director of the bank, then I charge you if you find these facts from the evidence that the plaintiff would not be totally disabled for carrying on an avocation for profit or remuneration, and you would answer the first issue 'No.'

"I charge you further that under the terms of the policy, it was the intention of the insured and the company to reimburse the plaintiff if he became wholly disabled from bodily disease from engaging in any occupation for remuneration or profit, and if you should find from all the evidence that the plaintiff has not been totally disabled and that he has been able to attend to his usual affairs and manage the same with profit and remuneration to himself, then in that event, although you may find he has been sick since the issuance of the policy, you would not find he was totally disabled and you would answer the issue 'No,' but as I have said, if upon a fair consideration of all the evidence, the physician's evidence and the evidence of the laymen and of the plaintiff and the defendant and their witnesses, you should be satisfied by the greater weight of the evidence that during this year he has been wholly incapacitated by disease so that he was thereby continuously and permanently prevented from engaging in any avocation for remuneration or profit, then you would answer the issue 'Yes.'"

In our opinion and as applied to the facts in evidence, these instructions are in accord with the general principles prevailing on a policy of this character, and as applied and approved by this Court in *Buckner*

*v. Ins. Co.,* 172 N. C., p. 762; Bacon on Benefit Societies, sec. 395a; 4 Cooley's Briefs, pp. 3288, 3292, 3293.

The exceptions noted to this presentation on the principal feature of the controversy can none of them be sustained. They are either based on prayers for instruction which to the extent permissible sufficiently appear in the charge as given, or they consist of excerpts which do not in their detachment express its true significance.

In numerous decisions applicable we have approved the position that the charge of the court must be considered as a whole in the same connected way in which it was given and upon the presumption that the jury did not overlook any portion of it. If, when so construed it presents the law fairly and correctly, it will afford no ground for reversing the judgment, though some of the expressions, when standing alone, might be regarded as erroneous. *S. v. Jenkins,* 182 N. C., p. 818; *Haggard v. Mitchell,* 180 N. C., pp. 255-258; *Harris v. Harris,* 178 N. C., pp. 7-11; *S. v. Exum,* 138 N. C., p. 599.

Appellant excepts further because plaintiff, testifying in the cause, was allowed to state that his condition in 1923 was worse than it was in 1920, 1921 and 1922, when the company, without suit, had voluntarily paid the ten per cent allowance now claimed for the year 1923. We think the evidence was properly admitted. Plaintiff had described his condition in these former years as suffering from tuberculosis contracted or developed as heretofore stated, and had also stated that in those years the plaintiff had been paid the ten per cent without suit, and the testimony here received bore directly on his condition at the time here sued for, and was competent as a recognition by defendant that plaintiff's instant condition brought him within the terms and conditions of the policy.

On careful consideration we find no reversible error in the record and the judgment for plaintiff must be

　　Affirmed.