# Equitable Life Assurance Society of the United States v. Green.

(Decided June 4, 1935.)

774

WM. MARSHALL BULLITT, EUGENE B. COCHRAN and BRUCE & BULLITT for appellant.

J. L. HARRINGTON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

James O. Green, a "coal loader," prior to July 9, 1932, was in the employ of the Consolidation Coal Company at its mine at Van Lear, Ky., and continued in its services until February 22, 1933. He was insured under two group policies, carried by the coal company with the Equitable Life Assurance Society of the United States, for the benefit of its employees. One of the policies provided for the payment of $1,750 on Green's

death while employed by the company, payable in sixty monthly installments of $31.71 each in lieu of the death benefit, provided he became "totally and presumably permanently disabled"; the other provided for the payment of $12 per week for a maximum of 13 weeks for temporary total disability, while employed by the coal company.

On July 9, 1932 he was taken sick with typhoid fever. From that date until October 8, 1932, or for 13 weeks, the Equitable paid him the $12 weekly benefit under the temporary disability policy. In the interim, by a rider to the policy providing for the payment of $1,750 on Green's death, the "total and permanent disability provision" thereof was deleted as of August 1, 1932. The rider provides:

"It is hereby agreed that the provision appearing in said Group Policy entitled 'Total and Permanent Disability Provision' shall be void on and after August 1, 1932, and that said policy shall thereafter provide for payment of insurance only in the event of death of an employee occurring while insured thereunder. Provided, however, that the Total and Permanent Disability Provision shall remain in effect with respect to any insured employees who may have become entitled to benefits thereunder prior to August 1, 1932."

After the expiration of the 13 weeks, during which he was paid the temporary benefit for temporary total disability, occurring as the result of typhoid fever, Green returned to the work of the Consolidation Coal Company; he loaded slate nine days, then he resumed his regular work of loading coal and continued thereat until the end of February, 1933. His average wage during this period was $5.48 per day, for ten to eleven hours a day. In August, 1933, he was examined at the "Golden Rule" hospital by Drs. Pickelsimer, Wells, and Castle. They claim they then discovered he was afflicted with "fever leg"; that his left leg was about one-fourth inch smaller in circumference than his right. According to these physicians, and especially Dr. Wells, his leg, during the year following their examination, greatly improved, and the probabilities were that it would continue to improve. Dr. Daniel examined him on February 15, 1934, the day before the trial, and most emphatically declared, while on the witness stand, that

Green's leg was normal; the same size as the right; the reflex normal; no varicose veins; no atrophy.

To recover of the Equitable the $31.71 per month for a period of 60 months, aggregating $1,902.60, on November 30, 1933, Green filed this action. The Equitable traversed his petition, and affirmatively pleaded that the group policy and his certificate of insurance issued thereunder were, on August 1, 1932, changed by a rider, and that after July 31, 1932, the "total and permanent disability provision" therein had been thus eliminated, and if Green thereafter, or at all, became totally and presumably permanently disabled, the same was not within the coverage of the policy, nor the certificate.

On a trial to a jury, a verdict was returned in his favor for $1,902.60. A judgment was accordingly entered against the Equitable.

It is here insisted that the evidence fails to establish that Green became "totally and presumably permanently disabled" prior to August 1, 1932; the verdict is flagrantly against the weight of the evidence; the testimony of a lay witness as to Green's ability to work was improperly admitted; and the court erred in the given instructions and in refusing to give proper instructions.

A careful review of the evidence and the instructions of the court convinces us the Equitable is entitled to a reversal. Since the case may be again tried, we express no opinion as to the sufficiency of the evidence to authorize the submission of the case to the jury; nor as to the question that the verdict is palpably against the weight of the evidence.

Van Hoose, Green's witness, not being a physician, was not qualified to express the opinions which the court permitted, respecting the character, class, and kind of work Green was able to perform. The court improperly permitted this witness to compare Green's ability to work before and after he had typhoid fever, and to state what Green had said to him respecting his (Green's) "taking doctor's medicine." The same line of questioning was permitted in behalf of the insured in Ætna Life Ins. Co. v. Gullett, 253 Ky. 544, 69 S. W. (2d) 1068, 1071, of which we said:

"Not being a physician, he was not qualified to ex-

press an opinion. A layman may testify to a thing within his knowledge concerning apparent conditions of another, but he may not express his opinion, since he cannot diagnose disease or give expert evidence with reference thereto.''

In Equitable Life Assur. Soc. v. Fannin, 245 Ky. 474, 53 S. W. (2d) 703, 706, the rule is stated:

"That lay witnesses may testify as to the apparent vigor, strength, and physical condition of another person and as to the symptoms indicating forms of disease so common and well understood as to be within the knowledge of a layman. But the evidence of a layman should be confined to facts within his knowledge and not permitted to extend to matters of opinion, since he cannot diagnose diseases or give expert evidence with reference thereto.''

North American Acc. Ins. Co. v. Caskey's Adm'r, 218 Ky. 750, 292 S. W. 297; Grand Lodge, Brotherhood, etc. v. Johnson, 228 Ky. 669, 15 S. W. (2d) 499; Sovereign Camp, W. O. W. v. Morris, 212 Ky. 201, 278 S. W. 554.

The court improperly disregarded these elementary rules in the admission of a great deal of the testimony of Van Hoose.

Green was permitted, over the objection of the Equitable, to testify as to his feelings relative to ability or disability to work, and to make other statements of a self-serving character to fix the liability of the Equitable for his condition. This line of testimony was disapproved in Horn's Adm'r v. Prudential Ins. Co. of America, 252 Ky. 137, 65 S. W. (2d) 1017, and cases therein cited.

The evidence of the parties was directed to the question whether Green's disability became total and presumably permanent, within the meaning of the policy, prior to August 1, 1932.

It must be conceded that the rider to the policy eliminated "the total and presumably permanent" disability provision as of August 1, 1932. Also, that Green was taken sick on July 9, 1932, with typhoid fever, and was thereafter paid $12 a week for temporary total disability for 13 weeks and then returned to, and engaged in, his work for practically four months. If he became totally and presumably permanently disabled after

August 1, 1932, such disability was not covered by the total and presumably permanent provision of the policy. On the contrary, if he became diseased prior to August 1, 1932, and the same developed thereafter into total and presumably permanent disability, though he thereafter ceased to be an employee of the Consolidation Coal Company, it cannot be doubted that in such event he is entitled to the benefit of the total and presumably permanent disability provision of the policy, since liability attached with inception of the disability. Prudential Ins. Co. v. Cox, 254 Ky. 98, 71 S. W. (2d) 31; Horn's Adm'r v. Prudential Ins. Co. of America, 252 Ky. 137, 65 S. W. (2d) 1017; Equitable Life Assur. Soc. v. McDaniel, 223 Ky. 505, 3 S. W. (2d) 1093; Equitable Life Assur. Soc. v. Fannin, supra; Mutual Life Ins. Co. v. Wheatley, 243 Ky. 69, 47 S. W. (2d) 961; Ætna Life Ins. Co. v. Wyant, 249 Ky. 562, 61 S. W. (2d) 50.

It is argued by Green that the parties, during the progress of the trial, "stipulated that the policy was in force at the time the plaintiff became sick with typhoid fever," which was July 9, 1932, and, therefore, the Equitable is now precluded from disputing that the total and presumably permanent provision of the policy was not in force after August 1, 1932, and that this stipulation relieved him of the imperative duty to establish by evidence that as an incident to his illness with typhoid fever he developed total and presumably permanent disability prior to August 1, 1932. We are not prepared to concur in this interpretation of the stipulation of the parties, since it expressly relates to the time he was sick with typhoid fever and does not import an agreement respecting any other time or affliction.

The instructions of the court fail to advise the jury of Green's duty to establish by the evidence that his total and presumably permanent disability for which he sues commenced prior to August 1, 1932. The evidence in behalf of the Equitable tends to establish that even though his claimed total and presumably permanent disability commenced before August 1, 1932, and after the expiration of the 13 weeks for which he was paid the $12 per week benefit, his leg had fully recovered and was normal in every respect.

The given instructions ignored this evidence, and the court omitted to give the requested instruction,

which it authorized. Under the given instructions the jury was bound to find nothing for the plaintiff, or find the entire sum, although it may have believed he was entitled to insurance indemnity during a part of the period or that his disability was neither total nor permanent. See Equitable Life Assur. Soc. v. Preston, 253 Ky. 459, 70 S. W. (2d) 18. A party is always entitled to an instruction presenting his theory where the evidence in his behalf tends to sustain it.

Green was insured prior to August 1, 1932, against the disabilities that will be both total and presumably permanent, but was not so insured thereafter. As was said in Equitable Life Assur. Soc. v. Powers, 254 Ky. 770, 72 S. W. (2d) 469, 470:

"There is a difference between permanent disability and total disability, as is discussed in Mutual Life Ins. Co. v. Wheatley, 243 Ky. 69, 47 S. W. [2d] 961." "The expression 'totally and permanertly disabled' * * * means a disability complete in its nature and more than temporary in its character —one, at least, that in all human probability w'll continue for a long and indefinite period of time."

Mutual Life Ins. Co. v. Wheatley, supra. See Mutual Life Ins. Co. v. Dause, 256 Ky. 448, 76 S. W. (2d) 233, and Prudential Ins. Co. v. Bond, 257 Ky. 45, 77 S. W. (2d) 373.

The rider to the group policy, on which Green's cause of action is based, is a part of the contract of insurance, and its terms must control the provisions of the policy and the individual certificates issued under the policy. Equitable Life Assur. Soc. v. Austin, 255 Ky. 23, 72 S. W. (2d) 716; Equitable Life Assur. Soc. v. Keck, 254 Ky. 773, 72 S. W. (2d) 466; Equitable Life Assur. Soc. v. Preston, supra; Equitable Life Assur. Soc. v. Hall, 253 Ky. 450, 69 S. W. (2d) 977.

The instruction of the court disregarded this rider.

For the reasons indicated, the judgment is reversed, with directions to grant the Equitable a new trial, and for proceedings consistent with this opinion.