## Mutual Life Insurance Co. of New York v. Beckmann.

(Decided Nov. 12, 1935.)

WILLIAM MARSHALL BULLITT, BRUCE & BULLITT, ROBERT LEE BLACKWELL and D. L. STREET for appellant.

WOODWARD, HAMILTON & HOBSON and THOMAS S. DAWSON for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The Mutual Life Insurance Company of New York appealed from a judgment in favor of Robert J. Beckmann upon two life insurance policies in the face amount of $10,000 with presumable total and permanent disability benefits in the sum of $100 per month under each policy and a waiver of premiums during the continuance of disability. "Total disability" is defined in the policy as follows:

"Disability shall be considered total when there is any impairment of mind or body which continually renders it impossible for the Insured to follow a gainful occupation."

"Permanent disability" is defined in the policy as follows:

"Total disability shall, during its continuance be presumed to be permanent; [a] If such disability is the result of conditions which render it reasonably certain that such disability will continue dur-

ing the remaining lifetime of the Insured; or, [b] If such disability has existed continuously for ninety days ''

Each policy gives to the Mutual Life the right to require Beckmann, from time to time, to furnish proof of the continuation of such disability, as a condition precedent to any obligation on the Mutual Life to make any further income, payment, or waiver of any further premiums    The policies are the same except one is dated August 24, 1928, and the other one is dated October 9, 1928.

In the latter part of 1929, it appears that Beckmann had a physical and mental breakdown and the Mutual Life paid him disability benefits from January 15, 1930, to November 15, 1933, at which latter date it discontinued the payments and the waiver of premiums on the ground that Beckmann had recovered from his disability.   Thereafter, Beckmann brought suit in the Jefferson circuit court on each policy, resulting in a jury verdict and judgment thereon on June 21, 1934, for $200 per month from November 15, 1933, to June 15, 1934, inclusive, and judgment was entered thereon for $1,400.   On June 22, the Mutual Life filed its motion and grounds for a new trial, and, while same were pending, Beckmann tendered an amended judgment on June 25, 1934, as follows:

''The judgment entered herein as of date June 21, 1934, is supplemented by the addition of the following:

''It is further adjudged by the Court that the plaintiff, Robert J. Beckmann recover from the defendant, Mutual Life Insurance Company of New York, the sum of $200 per month beginning July 15, 1934, and that same amount on the same day of each succeeding month thereafter until and including the 15th day of August, 1947, it appearing that the plaintiff will not be sixty years of age until August 16, 1947, or until plaintiff's presumably and permanent and total disability ceases, in event same should cease prior to the time required to make payment of the total of said 157 monthly payments or installments totaling $31,400.00, in addition to the $1,400.00 heretofore adjudged, or until plaintiff's presumably permanent and total dis-

ability ceases, in event same should cease prior to August 15, 1947, and defendant shall have the rights contained and specified in the policies sued on herein upon which it may proceed for the purpose of determining if such presumably permanent and total disability has terminated.

"For the purpose of further determining the rights of the parties hereunder, it is ordered that this case be filed away, with right to redocket at any time until all of said monthly payments have been made, or plaintiff's right to receive same or any part thereof is terminated by reason of recovery from his presumably permanent and total disability or death of the plaintiff, Robert J. Beckmann, to all of which the defendant excepts and prays an appeal to the Court of Appeals, which is granted."

On July 21, 1934, the court overruled the Mutual Life's motion and grounds for a new trial and its objections to the entry of the amended or supplementary judgment and entered the judgment.

Motion and grounds for a new trial consist of numerous items, but all of them are not insisted on in the brief. In the Mutual Life's brief it is insisted that the judgment should be reversed for the following reasons: (1) Beckmann had recovered from his disability prior to November 15, 1933; (2) the court should have peremptorily instructed the jury to return a verdict for the Mutual Life; (3) the court erred in its instruction defining "total disability"; and (4) the amended judgment is not supported by the pleadings or the law.

A large portion of the evidence relates to Beckmann's condition during the period of his conceded disability from January 15, 1930, to November 15, 1933, and it is unnecessary to enter into a discussion of the evidence during that period. We may say, however, that the evidence conduces to show that Beckmann's condition, both mental and physical, was bad during that period.

At the time Beckmann became disabled, he was engaged in business in Ferdinand, Ind., his principal occupation being that of a banker, and was vice president and cashier of the Beckmann State Bank. He was also secretary-treasurer of the Ferdinand Railroad Com-

pany and trustee of Ferdinand Water Works Company, and an officer and director in various other business associations. In October, 1933, just previous to the time the Mutual Life stopped paying Beckmann disability benefits, he moved from Ferdinand, Ind., to Louisville, Ky., and established the Beckmann Bath & Beauty Parlors, where he has since been engaged in this line of work. However, he insists that Mrs. Beckmann is the proprietor of the Beckmann Bath & Beauty Parlors, but it appears that he actively engaged in the work. He took a special course of training in this line of work before starting the business. According to Beckmann's testimony, his gross receipts from this business amounted to approximately $200 per month. It is insisted for the Mutual Life that Beckmann has been engaged in a gainful occupation since October, 1933, and therefore not entitled to any further disability payments under the provisions of the policies, which provide that he is entitled to such payments only if he is permanently disabled to follow a gainful occupation. It is insisted for Beckmann that at the time he was insured his occupation was that of a banker and that he is permanently disabled in that particular occupation and therefore entitled to the disability benefits of the policy so long as such disability continues or until he reaches the age sixty. The applications are filed with the policies and disclose that he gave his occupation as president of the Beckmann State Bank.

It is insisted for the Mutual Life that Beckmann's policies are unlike certain group policies which have been construed by this court to insure against disability to pursue the particular occupation engaged in at the time the insurance was written, and that under the policies here under consideration if the insured is able to engage in any gainful occupation, he is not entitled to the disability benefits. This question is too well settled to require any elaborate discussion. In numerous recent cases involving the construction of policies like or similar to the ones here under consideration, we have held that the same rule applied to these policies as is applied to the group policies, such as Equitable Life Assurance Soc. v. Branham, 250 Ky. 472, 63 S. W. (2d) 498, and Equitable Life Assurance Soc. v. Fannin, 245 Ky. 474, 53 S. W. (2d) 703, Prudential Ins. Co. v. Harris, 254 Ky. 23, 70 S. W. (2d) 949, and many other similar cases. This rule has been consistently adhered

to beginning with and since the case of National Life & Accident Ins. Co. v. O'Brien's Ex'x, 155 Ky. 498, 159 S. W. 134. See, also, Henderson v. Continental Casualty Co., 239 Ky. 93, 39 S. W. (2d) 209; Banker's Life Ins. Co. v. Green, 256 Ky. 496, 76 S. W. (2d) 276, which cases elaborately discuss this question. Many other more recent cases could be cited. This leaves for consideration the question whether or not Beckmann is presumably and totally disabled to pursue his occupation as a banker.

Dr. Dowden, who was Beckmann's attending physician, testified that his treatment of Beckmann consisted in treating him for minor physical irregularities and for what he classed as anxiety neurosis and all physical irregularities cleared up except occasional pain in the left eye. Dr. Dowden was asked whether or not Beckmann appeared to be mentally alert and he said that as far as he ws capable of determining he found no evidence of any mental incapacity and that he was mentally normal and was not disabled physically. Other doctors and lay witnesses gave similar testimony. Beckmann testified that his physical condition had been very good and that he had lots of strength physically and was strong and he thought he was in very good health at present. With respect to his mental condition, Beckmann testified that he was unable to concentrate over a long period of time, and that at times he has stomach trouble especially when worried or annoyed. He said:

"It makes me terribly sick and nervous, but my main trouble is—I am subject to severe pains in my left eye * * * sometimes it crosses over to the right. * * * It is something different than a headache, it is a piercing, drawing pain, a very severe pain. It seems to affect my left eyesight. When I get those pains my physical strength is gone. It seems like I am paralyzed on the left side."

With reference to his mental condition and ability to perform his usual customary duties with reference to reading or any sort of concentrated thought, he said:

"I can read and I can understand and I can comprehend over a period of perhaps thirty minutes or longer, then all of a sudden it seems like I get confused and I don't—I can't—I can read, you understand, I can read out loud and I can get out the words, but I don't know the meaning of them.

It looks like I don't know what it is all about."

He further testified that conflicting noise confused him to such an extent that he is unable to understand a person speaking to him if there is any other noise. He said that since his breakdown he has not been able to secure a responsible position, due to his mental and physical condition, and that is why he engaged in his present business, and before he became disabled he had an income of five or six thousand dollars per year as a banker and other business connections. Victor J. Bullitt, former president of the Lincoln Bank & Trust Company of Louisville, testified that previous to 1929 he was associated with Beckmann as a banker and had good opoportunity to observe him and "he was held in very high regard as a man of unusual intelligence, and he did not seem to show any affliction of any kind during that period of time. He was a normal man." Mr. Bullitt further testified that since Beckmann's breakdown in 1929, he had been going to Beckmann's bath parlor for the past few months and talked to him an hour or hour and a half at a time and that he observed quite a change in his mental attitude, saying:

> "Well, I notice in the course of conversation he will apparently at times—he has appeared bright and seems to be collected and will carry on a conversation with you maybe ten or fifteen minutes in a straight-forward way, and then all at once he seems to bounce off the subject and it seemed like he can't collect himself and he can't remember what he wants. The word he wants to use or he can't proceed with the conversation and he becomes usually a little irritated and a nervous disposition will develop. At that time, of couorse, he talks rather abnormally."

Mr. Bullitt further testified that from his knowledge and observation of Beckmann he did not think he was competent to do the work of a banker and that he could not trust him with executive work at all.

John Schneiders, a teacher fifty-two years of age, testified he had known Beckmann all his life and had seen him frequently before and after the nervous breakdown, and his description of Beckmann's conditions prior and subsequent to his affliction was in substance about the same testified to by Mr. Bullitt. William F. Stein, a public accountant of New Albany, Ind., testi-

fied that he had known Beckmann about fifteen years and previous to his afflictions he was an able banker and business man, but since his affliction he is very nervous and excitable and in conversation he does not get the thought attempted to be conveyed and cannot convey his thoughts to one talking to him. Dr. Sprague of Lexington, Ky., testified that for forty-four years he has devoted his time largely to the study and care of mental disease and that he has made various examinations of Beckmann and from these examinations and conversations with him he found no evidence of malingering or concealment, although he was on the lookout for that, and from his observation and the use of his best judgment, Beckmann is not qualified to take an executive position as president or cashier of a bank, but, on the contrary, he feels confident "that he is not able to do anything higher, anything calling for more mental effort, than the almost mechanical work he is now engaged in." He said that he believes Beckman's present condition is the result of a localized meningitis or inflammation of the brain; that Beckmann's condition is not the usual mental disease, but is what is known as an effective toxic condition or psychosis; that it is a nervous and mental condition in which there is a self-poisoning of the system; that these cases have occasional permanent damage to the brain and that he believes this is true of Beckmann; that there are localized spots of meningitis in the brain and that this is the cause of the acute headaches, accompanied by the confusion and exhaustion that Beckmann suffers from; that Mr. Beckmann cannot recover in a normal time, and probably not at all.

Dr. Nelson testified that in his opinion it would be impossible for Beckmann to continue in any capacity as a banker and that he believed that his condition was permanent, and that he did not believe that Beckmann could follow any gainful occupation in a competitive field and that he did not believe he would ever be able to do so.

Other doctors who testified for the Mutual Life contradicted to some extent the testimony of doctors and other witnesses who testified for Beckmann. Dr. Peabody, medical examiner for the Mutual Life, was asked about Beckmann's ability to engage in the occupation of a banker, and he said, "I think there are some lines of work in a bank that he could do. Yes,

sir, in a small bank—some line of work in a small bank that he could take care of in my opinion.''

From the resume of the evidence given, it readily will be seen·that it is amply sufficient to sustain the jury's finding under the instructions that Beckmann was disabled as a banker.

It is insisted that the court erred in its instructions defining ''total disability.'' The court instructed the jury that '' 'total disability' as thaι term is used in these instructions, means an inability to follow· continuously a gainful occupation.'' It then defined ''gainful occupation'' as follows:

> '' 'Gainful occupation' means, in this particular case, the occupation which the plaintiff was engaged in at the time the insurance was written, that of a banker, or similar occupation.''

This instruction or definition is in harmony with our construction of the policy and has been approved by this court in numerous recent opinions. There is no merit in the contention that the instruction is erroneous.

It is also insisted that the amended or supplementary judgment is not supported by the pleadings and violates sections 384 and 518 of the Civil Code of Practice. The only issue of fact to be determined by the jury was the question of Beckmann's disability, and the jury having found that he was disabled, the court had the right to fix the rights of the parties according to the contract. Otherwise a circuity of actions would result and be more harmful than beneficial to all parties concerned. This form of judgment has been approved by this court in numerous recent cases, including Equitable Life Asurance Soc. of U. S. v. Branham, supra, also Prudential Ins. Co. of America v. Hampton, 252 Ky. 145, 65 S. W. (2d) 980; Equitable Life Assurance Soc. of U. S. v. Goble, 254 Ky. 614, 72 S. W. (2d) 35.

The grounds and reason for our approval of such form of judgment is clearly and aptly set out in the Hampton Case, supra, and those cases are conclusive of this question.

Finding no error prejudicial to the substantial rights of the appellant, the judgment is affirmed.