## Travelers Ins. Co. v. Mahon.

(Decided May 24, 1938.)

692

TRABUE, DOOLAN, HELM & HELM for appellant.

CRAWFORD, MIDDLETON, MILNER & SEELBACH for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

On May 7, 1926, the Travelers Insurance Company of Hartford, Connecticut, hereinafter referred to as the company, issued to James Clelland Mahon, Jr., then 35 years of age, a life policy in the sum of $25,000.00. It contained the following provisions concerning permanent total disability benefits:

"Upon due proof that since the payment of the initial premium upon this contract, before a default in the payment of any subsequent premium, and before the anniversary of this contract nearest the sixty-fifth anniversary of the date of birth, the Insured has become wholly disabled by bodily injuries or disease and will be continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit, the Company will waive the payment of any premiums which may fall due on this contract during such disability, and will pay for each completed month from the commencement of such disability and during its continuance the disability income stated on the first page of this contract. Provided,

that in a case not susceptible of proof of permanency when claim is presented, then after the Insured has been wholly disabled by bodily injuries or disease and has been prevented thereby from engaging in any occupation or employment for wage or profit for a period of not less than three consecutive months, upon due proof thereof the Company will grant the aforesaid benefits from the commencement of such disability and during its continuance.''

On December 19, 1935, the insured instituted this action against the company alleging in substance in his petition as amended that prior to July 17, 1934, and while the policy was in full force and effect he became and has since been wholly· disabled by bodily injuries and disease and would be continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit; that he had made due proof of such disability and on August 17, 1934, the company had paid to him the sum of $250.00, and continued such monthly payments thereafter to and including September 17, 1935, but had since refused to pay the monthly sum of $250.00 for any of the months thereafter up to and including April 17, 1936.

By answer as amended the company traversed the material allegations of the petition and alleged in substance in a second paragraph that at the time the policy was issued, insured was residing in the state of North Carolina and that all transactions in connection with the policy were had in that state and that under the laws of the state which were pleaded, the policy contract was subject and controlled by the laws of that state. The issues were completed by reply traversing the affirmative allegations of the answer. Trial by jury resulted in a verdict finding for plaintiff and on June 23, 1936, it was adjudged that plaintiff recover of the company all monthly installments from and after October 17, 1935, to and including June 17, 1936, with interest and that he ''recover of the defendant, the Travelers' Insurance Company, the sum of $250.00 on the 17th day of each month after June, 1936, until his death, or until plaintiff is no longer totally disabled by injury or disease so that he is not· thereby prevented from performing substantially the reasonable and essential duties with reasonable continuity or regularity in his work as a traveling salesman selling veneers, or any

such work as he is qualified, physically and mentally, under all the circumstances to do."

It was further adjudged that for the purpose of further determining the rights of the parties the case be filed away with leave to redocket it at any time, until all the monthly installments had been paid or until plaintiff's right to receive same or any part thereof was terminated by cessation of disability.

The company is appealing and it is first argued that the case is governed by the law of North Carolina. For the purpose of this appeal we shall assume that to be true in so far as the construction and effect to be given the policy contract is concerned.

It is next argued that appellant's motion for a directed verdict in its favor should have been sustained and that calls for a brief statement of the substance of the evidence. Appellee was a traveling salesman for a veneer company, apparently a very good one, since his earnings were usually large, ranging from about $9,000.00 to $30,000.00 annually for a period of six and one-half years. In March, 1931, he had an automobile accident and for a few days thereafter felt no ill effects. In about a week he begun to suffer with his back and a swelling later developed in his legs. He was able to carry on his work fairly well until January, 1932, but stated that thereafter he traveled only one or two days out of every three weeks but had a partner who looked after his business; that he did not work at all after February, 1934, because he was unable to do so. He consulted and was treated by a number of doctors. He stated that he had pains in his back and legs, edema of the legs and ankles and was unable to bend over, had heart trouble, was bothered with constipation, indigestion, nausea, and headache and his ankles would swell when he was up for a few hours. He displayed his legs to the jury to show pitting edema was then present. Doctors Barnett Owen, R. C. Ackenstedt, John J. Moren, of Louisville and Dr. A. R. Barnes of the Mayo hospital in Rochester, Minnesota, testified in behalf of appellee. Dr. Owen testified that he saw appellee 62 times between September 21, 1934, to April 1935, and found an inflammation between the last vertebra and the bone that it sets on; that he had a peculiar swelling in his legs and ankles, the cause of which could not be determined. While on the witness stand,

696

this physician examined appellant's legs and stated his condition was the same as it was when he saw him before; that the condition of the legs indicated that there was something wrong with his system; that in his condition he could not work with any regularity; that during the time he treated him he considered him wholly disabled. Dr. Ackenstedt likewise examined appellee's legs and stated that they appeared abnormal and indicated heart trouble; that he had treated appellee from October, 1934, to the time of the trial and discovered that he was suffering from myocarditis or weakened heart condition. He gave as his opinion that appellee had been unable to do any work since he had been treating him; that there had been some improvement in the condition of the heart; that there were some symptoms of the disease known as beriberi which was caused by a deficiency of vitamin B. Dr. Barnes testified that he found stiffness of the knees after sitting for a while, pitted edema, soreness of sacroiliac joint, basal metabolic rate of minus 14 or a little below normal. He was unable to discover any cause for appellee's condition but diagnosed his illness as nervous exhaustion, chronic prostatitism, fibrositis, chronic constipation, migraine, and edema of the legs; that the nervous exhaustion was due to lack of capacity to function efficiently and caused by stress, strain, worry, fear, anxieties, shock, mental conflict, or overwork and that it might cause unusual rapidity of the heart, a chronic state of indigestion, and painful condition of the muscles; that appellee was temporarily totally disabled, but that he could not determine the probable duration of such disability. Appellee introduced some lay witnesses whose evidence indicated that his physical condition was bad.

Appellant introduced some lay witnesses including Maxwell Allen, who was employed by the insurance company to follow and observe the activities of appellee. This witness kept appellee under pretty close observation for four or five months and testified concerning his activities in driving an automobile, going to night clubs, cafes, race tracks, etc. While appellee denied some of the evidence of this witness concerning his activities he admitted that he had gone to a number of the places testified to by Allen, but his evidence indicates that he did not and could not exert himself to any degree. Appellant also introduced as witnesses, Dr. Virgil Simpson, Frank Strickler, W. E. Gardiner, H.

B. Weiss, H. C. Herrmann, Arnold Grollman, Glenn Spurling, J. C. Bell, W. J. Martin and D. Y. Keith, practically if not all of whom examined appellee at the instance of appellant. While some of these physicians testified to some of the conditions as edema of the legs, accelerated heart beat and other matters testified to by expert witnesses for appellee, most of them stated that they found nothing abnormal, and their opinions indicated that appellee was not disabled to any appreciable degree. Dr. Simpson was asked on cross examination if he had not stated to appellee when he examined him that he was unable to work and testified in substance that he did not. Appellee was later recalled and testified to the statements made to him by Dr. Simpson at the time, the substance of which was that appellee would have to gradually resume any kind of work or activity requiring exertion and that he was unable to work more than a few minutes a day at the beginning.

On the whole the evidence for appellee clearly conduces to show total disability and inability to perform his work as a salesman or do anything requiring mental or physical exertion. The evidence for appellant indicates an entirely different situation and conduces to show that appellee is not so disabled. It is an established rule that where there is any evidence to support a cause of action or if reasonable men might draw different conclusions from the evidence, a peremptory instruction should not be given, but a verdict should only be directed peremptorily when after admitting all the evidence for the plaintiff to be true as well as reasonable inferences therefrom there has been a failure to establish a case. Provident Life & Accident Insurance Company v. Diehlman, 259 Ky. 320, 82 S. W. (2d) 350; Van Sant's Adm'r v. Overstreet, 261 Ky. 58, 86 S. W. (2d) 1008; North American Accident Insurance Company v. West, 245 Ky. 316, 53 S. W. (2d) 692. Where as in this instance the evidence strongly tends to sustain the claim of total disability, it is for the jury to determine the credibility of the witnesses and the weight to be given their evidence. John Hancock Insurance Company v. Cave, 240 Ky. 56, 40 S. W. (2d) 1004, 79 A. L. R. 848.

Argument is made that the instructions given by the court are erroneous and that the court erred in not giving instructions offered by appellant but it is our view that the instructions given submitted to the jury

every issue made by pleading and proof. They are terse, concrete and so clear, direct and unambiguous as to be easily understood by a juror of ordinary intelligence.

The principal criticism is directed at instruction B1, it being urged that it is erroneous, first, because it made no reference to certain words used in the quoted provisions of the policy such as "continuously, and wholly prevented thereby for life," and "from engaging in any occupation or employment for wage and profit," that it embraced no idea of permanency or continuousness and (2) because there was no definition of the words "wholly disabled" and other words and phrases found in the provisions of the policy.

With the exception of Lee v. New York Life Insurance Company, 188 N. C. 538, 125 S. E. 186, all the cases cited by counsel for appellant in support of this contention are domestic cases. By stipulation of the parties it was agreed that a number of North Carolina cases might be considered in evidence as bearing on the law of that state relating to insurance contracts of this character. In Misskelley v. Home Life Insurance Company, 205 N. C. 496, 171 S. E. 862, an action on an insurance policy containing disability provisions similar in all respects to the one under consideration, the court in its charge to the jury defined the meaning of total disability, etc. as used in the policy in practically the identical language used in the instruction under criticism. In the North Carolina case cited by appellant in this connection the appellate court merely approved instructions embodying some of the words and phrases of the disability clause which were not used in the instruction in the Misskelley Case and there was nothing in the opinion to indicate or from which it might be reasonably inferred that the instruction in the latter case was erroneous. No additional definition of the words "wholly disabled" was necessary since the instruction itself fully defined that and other terms used in the disability provision as construed by the courts of North Carolina. The reason this court has been rather exacting in requiring that the words "total disability" as used in insurance contracts of this character be defined, is that it has narrowed the scope of the disability provision and held that it applies to disability from the particular occupation in which insured was engaged. See Mutual Life Insurance Company of New York v.

Beckmann, 261 Ky. 286, 97 S. W. (2d) 602; Prudential Insurance Company v. Bond, 257 Ky. 45, 77 S. W. (2d) 373. While the courts of North Carolina and many other states have given a broader interpretation and held in effect that total disability means being totally disabled for all kinds of work, business or occupations, unless by the contract the disability is to be only for the particular occupation in which the insured is engaged at the time the policy was taken. Insistence that the instruction is prejudicially erroneous in that it did not embrace the idea of permanency cannot be sustained since under the quoted provisions of the policy permanent disability is presumed after the insured has been wholly disabled from engaging in any occupation or employment for a period of not less than three consecutive months.

Before the jury could find for appellant they were required under the instruction given to believe that appellee had since September 7, 1935, been totally disabled so as to prevent him from performing with reasonable continuity or regularity his usual work or any work, mental or physical. The jury found from the evidence that he had been so disabled and there was evidence to support such finding and that the disability would continue for an indeterminable time.

It is further argued that the court erred in admitting incompetent evidence and this relates to some evidence of appellee concerning his condition and his disability to perform certain task in connection with his employment. Appellee related fully his condition and stated only facts presumably within his knowledge. He testified that because of these things he was unable to do certain work in connection with his employment and how it affected him to attempt to do it. Question is made of this evidence and the case of Equitable Life Assurance Soc. v. Green, 259 Ky. 773, 83 S. W. (2d) 478, is cited. In that case it was held that Green should not have been permitted to testify as to his feelings relative to his disability to work, but in the present case appellee was not testifying concerning his feelings or opinion about the matter but was detailing what purported to be facts within his knowledge. It is also argued that the court erred in permitting appellee to testify on recall to a statement made to him by Dr. Simpson concerning the extent of his disability, but Dr. Simpson had previously denied that he made such

statement, therefore the evidence complained of was properly admitted in rebuttal.

Question is made of the evidence of a layman because he was permitted to give his opinion based on his observation and knowledge of appellee's condition concerning his ability to perform the tasks incident to his employment. While as a general rule lay witnesses may testify concerning the apparent vigor, strength or physical condition of another and as to symptoms of disease so common as to be within the knowledge of laymen, it has been consistently held in this court that lay witnesses should not be allowed to testify as experts or give opinions on such matters. Equitable Life Assurance Society v. Fannin, 245 Ky. 474, 53 S. W. (2d) 703, and cases therein cited. Possibly in this instance the witness was permitted to go too far, but as indicated in the Fannin Case the error was harmless since a number of other witnesses had given competent evidence to the same effect.

Appellee testified that he knew he was being followed by the man employed by the insurance company to shadow him and when asked concerning dates he was followed he referred to a written memorandum. Counsel for appellant asked that he produce this writing for their inspection and it is urged that the court erred in not requiring that he do so. Respectable authority is cited as supporting this contention, however, in the circumstances we are inclined to the opinion that no error was committed in this particular since the man employed by the company to follow appellee had already testified that he did follow and observe his movements on the dates given by appellee after he refreshed his memory from the writing.

Finally, it is argued that the court erred in entering a prospective judgment covering future installments but it is admitted by counsel that such has been the procedure in this state, however, it is argued that this case is distinguishable because (1) appellee's petition contains no prayer for such relief; (2) that there was no evidence that appellee was wholly disabled and would be continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit and (3) that the contract must be construed according to the laws of North Carolina under which a prospective judgment is not allowed.

However, counsel admit that a prospective judgment was affirmed in Mutual Life Insurance Company v. Beckmann, supra, when there was no specific prayer for that relief. What we have already said concerning the evidence and the instructions disposes of the second point. While it may be true as we have assumed that the laws of North Carolina apply in construing and giving effect to the contract, the weight of authority indicates that in the matter of procedure or remedy, the law of the forum applies. See 13 C. J. 259; Moody v. Barker, 188 Ky. 401, 222 S. W. 89; Fry Bros. v. Theobold, 205 Ky. 146, 265 S. W. 498; 11 Am. Jur., Conflict of Laws, Sec. 186; Louisville & Nashville Railroad Company v. Burkhart, 154 Ky. 92, 157 S. W. 18, 46 L. R. A., N. S., 687; Beale on Conflict of Laws, Vol. 1, p. 86; Dicey on Conflict of Laws (3rd) 761. Furthermore, there was no proof of the laws of North Carolina in this particular, and in the absence of such proof, the court will not take judicial knowledge of the laws of that state. Orendorf et al. v. Hunt, 272 Ky. 334, 114 S. W. (2d) 86, but it will be presumed that the common law prevailing there is the same as the common law of this state. United States Cast Iron Pipe & Foundry Company v. Henry Vogt Machine Company, 182 Ky. 473, 488, 206 S. W. 806.

Judgment affirmed.