EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES v. BOMAR et al.
No. 7832.

Circuit Court of Appeals, Sixth Circuit.
Oct. 6, 1939.

Eugene B. Cochran, of Louisville, Ky. (William Marshall Bullitt, Eugene B. Cochran, and Bruce & Bullitt, all of Louisville, Ky., on the brief), for appellant.

Mark Beauchamp, Sr., of Louisville, Ky. (Mark Beauchamp, Sr., and Mark Beauchamp, Jr., both of Louisville, Ky., on the brief), for appellees.

Before HICKS, ALLEN and ARANT, Circuit Judges.

HICKS, Circuit Judge.

Appellees, Doris W. Bomar and Claude V. Lussky, Administrators of the Estate of Henry V. Bomar, sued appellant, the Equitable Life Assurance Society of the United States, upon a policy of insurance on the life of the deceased to recover disability benefits and also certain premiums which appellees alleged had been unlawfully collected and retained by appellant.

There was a verdict and judgment for appellees in the sum of $3,430 and interest

642

on account of benefits, and $980 with interest on account of premiums. Appellant complains,—(1) of the denial of a directed verdict in its favor; (2) of the admission of certain evidence; and (3) of alleged erroneous instructions.

The policy provides that the disability benefits provision shall become effective upon receipt of proof,—

"* * * that the insured became totally and permanently disabled * * * in which event the Society will grant the following benefits:

"(a) Waive payment of all premiums * * * during the continuance of such total and permanent disability; and

"(b) Pay to the insured a monthly Disability-Annuity * * * during the continuance of such total and permanent disability."

If appellees are entitled to recover the benefits they are likewise entitled to recover the premiums.

On October 21, 1930, within the life of the policy, the deceased, fifty-three years old, was injured in an automobile accident. It is conceded that from that date until February 21, 1931, he was totally disabled. The issue is whether he was so disabled from February 21, 1931, until his death on December 22, 1933.

At the time of his injury the deceased was the president and active head of three related and successful business corporations, i. e., Bomar-Summers Hardware Company, a large retail hardware store; the Gas & Electric Shop, which dealt in electric appliances; and Bomar Manufacturing Company, a manufacturer and seller of metal products. He was the principal stockholder in each of these concerns. There is evidence tending to show that he devoted his time to the management of these businesses, giving to each such attention as was necessary.

Dr. Sherrill testified that before his injury the deceased was a normal man. Dr. Simpson, who had been his family physician since 1911, testified that prior to the injury, "* * * he was a clearheaded, energetic, driving sort of personality. He had a very placid, even temper." Consequent upon his injury, he was taken to a hospital and was unconscious for a period of three weeks. He had suffered a number of bruises of varying degrees of severity on his body, one eye was badly damaged, some of the bones of the spine and head were fractured and an autopsy revealed scars upon the brain, which indicated lacerations of the brain structure. After he regained consciousness at the hospital there were periods when he did not know who he was or where he was. In December he returned to his home, against the advice of his physicians. He improved mentally and physically and in March or April, 1931, over the protest of his physicians, he undertook to resume charge of his three businesses.

But there was substantial evidence tending to show that he was physically weak and had suffered a change in mentality; that he would have spells when his memory would fail completely; that there was a loss of coordination and judgment; that he was unable to concentrate or to grasp details; that he became irritable, not only with his family but with his employees and customers and on various occasions would create scenes of violence; that he was restless and unable to sleep well. Dr. Simpson described him as a hopeless wreck, mentally and physically. He testified further,—"He wasn't able to work physically and certainly he wasn't able mentally. He couldn't talk any kind of business, even the simplest sort, with any degree of clarity."

On March 25, 1933, the Gas & Electric Shop was adjudicated a bankrupt upon a voluntary petition. By this time the Manufacturing Company's business had dropped from more than $200,000 gross sales to less than $30,000. It had ceased manufacturing and its income was derived from commissions on sales of washing machines. In February, 1932, the deceased, by agreement with other stockholders, officers and directors, retired from the management of the hardware company. One of the reasons given was the condition of his general health.

We think the motion for a directed verdict was properly denied. We conclude that there was substantial evidence that the insured was totally and permanently disabled within the meaning of the insurance contract. The policy defined total and permanent disability as follows:

"Disability shall be deemed to be total when it is of such an extent that the Insured is prevented thereby *from engaging in any occupation or performing any work for compensation of financial value*, and such Total Disability shall be presumed to be Permanent when it is present and has

existed continuously for not less than three months; * * *."

We have italicized that portion of the clause upon which appellant relies.

In his application for the policy issued in 1924, the insured gave his occupation and business as a "hardware dealer." He stated that he had no other occupation and contemplated no change. The disability clause must be construed in the light of these statements. Prudential Ins. Co. v. Harris, 254 Ky. 23, 70 S.W.2d 949, 953; John Hancock Mut. Life Ins. Co. v. Cave, 240 Ky. 56, 58, 40 S.W.2d 1004, 79 A.L.R. 848. Appellant knew that it was insuring Bomar against total disability to transact a business requiring not only physical effort but judgment and discretion.

If the insured was unable either physically or mentally to discharge the important and material duties necessary to the prosecution of his businesses in substantially his usual and customary manner, he was totally disabled. Such are the holdings generally and the Court of Appeals of Kentucky is in accord.

In Prudential Ins. Co. v. Harris, supra [254 Ky. 23, 70 S.W.2d 951], the court in construing a similar disability clause, said: "We have construed the provision undertaking to limit the indemnity against disability to perform any kind of labor as contemplating an inability to do all the substantial and material acts necessary to the prosecution of the insured's business or that which is required of him in the performance of his occupation in the customary and usual manner."

The court further said that,—"For twenty years and more this rule of construction has been consistently applied * * *." See also John Hancock Mut. Life Ins. Co. v. Cave, supra; Equitable Life Ins. Co. of Iowa v. Hauser, 269 Ky. 374, 107 S.W.2d 282, 284.

Measured by this test, the evidence was sufficient to sustain the verdict.

It is said that the court erred in instructing the jury that total disability existed if Bomar was unable to perform "all the important duties necessary in the practical conduct of his vocation, or his business in substantially his customary and usual manner." What the court did say on this subject was, that total " * * * disability exists only when by the impairment of mind or body or both, the insured

is unable to perform all of the important duties necessary to the best practical conduct of his vocation or business in substantially his customary and usual manner."

This instruction is substantially in accordance with the law, as above indicated.

It is urged as error that the court instructed the jury that, "You will *ignore* matters in his business or vocation which are trivial or not material to the conduct thereof, but which are merely incidental thereto, * * *" (Italics ours.)

The use of the word "ignore" was technically inaccurate but obviously it worked no prejudicial injury and did not constitute reversible error.

It is argued that the court erroneously permitted lay witnesses to give opinions touching deceased's physical and mental condition. The evidence complained of is as follows: "* * * his physical condition was very poor; he could hardly get along." He was "very, very feeble * * his mind wasn't active * * * his physical condition was very poor * * * he was unable to fathom out,—figure out the finished report. * * * He would discuss business matters but he couldn't discuss them in the same way he had before; he couldn't go into any lengthy matters that required any time, or anything like that * * *"; "he never did get back into the business, of course, in the same way he was before."

This character of testimony was given by witnesses who had associated with and personally observed the appearance, manner, habits and conduct of the deceased, and was competent. Conn. Mut. Life Ins. Co. v. Lathrop, 111 U.S. 612, 4 S.Ct. 533, 28 L.Ed. 536; Equitable Life Assur. Soc. of United States v. Green, 259 Ky. 773, 83 S.W.2d 478, 480; Prudential Ins. Co. v. Sisson, 276 Ky. 506, 124 S.W.2d 739, 741.

Another answer complained of was, "No sir; from my personal viewpoint he was really unfit to handle the business." This was objected to and under the direction of the court any prejudicial effect from it was removed.

Appellant complains that the court permitted the introduction of testimony touching the deceased's condition prior to his injury. This assignment is without merit. Such testimony was relevant for whatever it was worth in determining the extent of the deceased's disability caused

644

by the injury itself. Moreover, such testimony was merely cumulative to the testimony of Drs. Sherrill and Simpson, which was unexcepted to. Travelers Ins. Co. v. Mahon, 273 Ky. 691, 117 S.W.2d 909, 914.

Judgment affirmed.