## Aetna Life Insurance Company v. McCullagh.

(Decided March 25, 1921.)

### Appeal from Henderson Circuit Court.

1. Insurance—Accident Insurance—Disability—Evidence.—One holding a clerical position that calls for daily trips to the post office and bank, the recordation of contributions and acknowledgment of funds and letters, who with the use of crutches is able, after an accidental injury, to walk to the post office on personal business, who is a regular patron at the picture shows and an almost daily visitor at a club, and who has made no effort to perform his accustomed duties, can not be said to be totally disabled from performing all the substantial duties of his office and thereby entitled to recover weekly indemnity under an accident policy providing for both total and partial benefits.

2. Insurance—Accident and Indemnity Insurance—Instructions.—In a suit to recover weekly indemnities for total disablity under an accident policy, though issue is joined on the question of total disability, if the policy provides for partial as well as total disability, and the evidence discloses that insured has been disabled but fails to establish a case of total disability the court should instruct the jury to find for plaintiff under that clause of the policy providing indemnity for partial disability.

YEAMAN & YEAMAN for appellant.

J. L. DORSEY and J. C. WORSHAM for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

December 20, 1916, appellant issued to appellee an accident policy providing for specified indemnities in the event of injuries sustained by insured. On December 22, in stepping from a platform in a lodge room, insured fell and sustained injuries which he claimed thereafter continuously, permanently and totally disabled him from transacting any and every kind of business pertaining to his occupation.

He was secretary to his uncle, who was the financial secretary of the American Sunday School Union. His daily duties consisted of about four trips to the post office to take and receive the outgoing and incoming mail. He usually went to bank twice each day. He filled orders for books, kept a record of the contributors, their names and addresses and entered in a cash book all receipts and disbursements, acknowledged receipt of funds, and wrote most of the letters sent from the office though his uncle usually suggested what the letters should contain. In short he performed those clerical duties usually incident to such a position and such as might be necessary in the proper conduct of his office. The company declined to recognize his claim for indemnity, whereupon he instituted suit to recover for 51 weeks' total disability from the date of the accident to December 17, 1917, and a judgment in his favor for the amount sued for was affirmed by this court in 185 Ky. 664, 215 S. W. 821. He was confined to his bed from the time of the accident until the latter part of June, 1917. He is suffering from a stiffening of the knee joint; ankylosis is the medical term used to express his condition. The injured leg is shorter than the other, thus compelling him to use crutches. From his hip to the ankle is one bone; the only elasticity is at the ankle. Owing to a general infection in the leg, an attempt to amputate it might produce blood poisoning. The doctor, the only other witness who testified, corroborates appellee as to the condition of the leg. This condition, insured claims, continued from December 22, 1916, to January 30, 1920. He says he can not walk any great distance at one time, and that he has not performed any of the duties at the office since the injury. That because of his inability to carry books or heavy packages of mail or to make regular trips to the post office and bank, the fact that he can not sit at a table nor stand at

a desk for any considerable period of time and can not go out in bad weather, (that is, when the pavements are slick or covered with ice, or when it is raining or snowing), he has sustained injuries of such a permanent and total nature as entitle him to the maximum benefits of his policy. However, on cross examination appellee admits that while he has not undertaken to do any banking for his uncle since the injury, he goes to bank to attend to his personal business. When the weather is good he makes daily trips to town, a distance of a few blocks. He is a regular and almost daily patron of the picture shows, and for this reason is given a special seat so that he can stretch out his leg. From the theatre he usually goes to the club for an hour or so before going home. He has made no effort to see how much, if any, work he can do since the accident.

The present suit in which he recovered judgment for the full amount sued for, includes the period from December, 1917, to January 30, 1920, 111 weeks at $25 per week, or $2,775. Complaining of this judgment the company has appealed. Aside from certain enumerated single indemnities the policy provides for two classes of weekly indemnity, to-wit:

"Total Disability. A. If such injuries do net result in any of the losses provided for in Part 1, but alone totally disable the insured, that is, from date of accident continuously and wholly prevent him from prosecuting any and every kind of business pertaining to his occupation, the company will pay the sum of twenty-five dollars per week so long as he shall live and suffer such disability," and

"Partial Disability. B. If such injuries do not totally disable the insured, as above, but alone partially disable him, that is, from date of accident or immediately following a period of total disability as above defined, continuously and wholly prevent him from performing one or more important daily duties pertaining to his occupation, the company will pay one-half of the amount per week payable for total disability for the period of such partial disability, but not for more than twenty-six consecutive weeks."

The court held in the former opinion that appellee had suffered a total disability for the period covered by the first suit. Notwithstanding the statement of the insured that there has been no change in his condition since

December, 1917, it becomes necessary for us to decide whether during that period he has been wholly disabled from performing all the substantial and material duties of his office. Two kinds or degrees of disability are covered by the policy, one total, the other partial. The latter contemplates an accidental injury that does not incapacitate or prevent insured from performing substantially all the duties of his position. It is expressed in the policy as being such as prevents the performance by insured of one or more important daily duties pertaining to his occupation. The evidence does not impress us as it did the court below in that it does not carry the conviction that appellee has shown such a total disability as was contemplated by the terms of the policy.

He says he has made no effort since December, 1917, to do the office work. Oftentimes man only fails when he fails to try. How can appellee know he can not substantially perform the duties of his office when he admits he has made no test of his ability along that line? This court is committed to a liberal construction of policies such as that in evidence, liberality toward insured, but beyond certain limits we are unwilling to go. We must not do violence to clear and explicit language to fix or increase liability by construction when it does not exist by a fair interpretation of the contract.

Common observation makes us cognizant of the fact that persons whose condition compels them to use crutches can get around during inclement weather almost as well as any one else, their physical handicaps considered. Nor have we noticed that rain, snow, or sleet operates to any great extent as a deterrent to such persons when desirous of getting about. The vocational training of soldiers injured in the World War has demonstrated the possibilities of the efficient service that can be rendered and the useful and lucrative employment that can be followed by these men. It will not do to say that one who can go to the post office, bank and other places on personal business; walk a number of blocks to town at least once a day; spend an hour or two most every day at a picture show and an hour daily at the club, is totally disabled from performing the clerical duties such as appellee says he attended to prior to his injury. It is not disputed that appellee's injury is painful, serious and permanent. Our inquiry is addressed to the effect it has upon his ability to perform his customary duties. That he

can not perform them as well or with the same celerity as formerly goes without saying. He will necessarily suffer inconvenience. A rearrangement of his daily schedule may be deemed advisable. The diversion or change from a sitting or standing position after a few hours' continuous work may be found in the trips to the bank and post office. He may be surprised at his accomplishment after an earnest, persistent effort to do his work.

The issue raised by the pleadings involved only the question of total disability. The instruction tendered by appellant embodied this theory, nor was it essentially different from the instructions given, hence the court did not err in its refusal to give it.

In Continental Casualty Co. v. Matthis, 150 Ky. 477, 150 S. W. 507; National Life & Acci. Ins. Co. v. O'Brien's Ex'x, 155 Ky. 498, 159 S. W. 1134; Hartford Accident & Indemnity Co. v. Davis, et al., 184 Ky. 487, 210 S. W. 950, and Doyle v. New Jersey Fid. & Plate Glass Ins. Co., 168 Ky. 780, 182 S. W. 944, we had under consideration policy provisions similar to those in this suit. In the last opinion the facts were held insufficient to show insured was totally disabled, in the others a different conclusion was reached. A *resume* of the facts in each case will be found in the Davis case. The evidence in the first three cases was such as to show insured was unable to perform substantially all the duties of his business. In the Doyle case recovery was denied upon the showing that for several weeks insured was regularly at his office performing at times practically all of his accustomed duties. McCullagh's inability to do his former work does not appear nearly so extensive as was the case with Matthis, O'Brien and Davis. Whether he could have done as much or more than Dr. Doyle we do not know. We can not indulge in presumption of his inability in this respect. A recovery for total disability can not be sustained under circumstances such as are disclosed by this record where the policyholder contents himself with the statement of his inability to perform that which he has never attempted to do.

Counsel is mistaken in assuming that the policies in the cases above referred to did not contain clauses covering both total and partial disabilities. Upon an examination of the original policies we find both provisions, but we are unable to find that the point urged here was

made in any of them, viz., that insured's recovery was limited (after December, 1917) to the benefits provided for in the clause pertaining to partial disability.

The evidence was not sufficient to authorize an instruction on total disability, hence a reversal must be ordered.

However, a claim for partial disability was clearly shown and had appellee requested it a directed verdict in his favor should have gone, to the extent warranted by the policy for a partial disability. Upon a retrial, the evidence being the same, this should be the order, but if other evidence is introduced the court will submit the case under proper instructions not inconsistent herewith.

For reasons above given the case is reversed for further proceedings consistent herewith.