# Equitable Life Assurance Society of United States v. Powers.

(Decided June 6, 1934.)

(Rehearing Denied June 19, 1934.)

BRUCE & BULLITT, WILLIAM MARSHALL BULLITT, and E. B. COCHRAN for appellant.

KIRK & WELLS for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The verdict in favor of the appellee, Braden Powers, on account of total and permanent disability under group insurance policy was for $2,058.60. The judgment provides for its satisfaction in 60 monthly installments of $31.71 or until the plaintiff's presumably permanent and total disability ceases. The rights of the insurance company with respect to the cessation of payments upon the termination of the disability are conserved by the judgment and the case was ordered filed

away with a right to redocket it at any time during the period covered by the installments for the determination of the question of future liability.

The point made on the appeal that the court was without power to render such judgment has been disposed of in Equitable Life Assurance Society of United States v. Goble, 254 Ky. 614, — S. W. (2d) —, and Equitable Life Assurance Society of United States v. Preston, 253 Ky. 459, 70 S. W. (2d) 18.

The point that the verdict is flagrantly against the evidence is well taken. The insured was a laborer at a mine tipple with the particular duty of looking after the moving cars. Before that special assignment he had loaded coal and before that he had worked on a railroad as a section hand. His testimony is that when he quit work February 29, 1932, "he had pains in the head and discharge from the ear drums, stomach bad, bad odor from my breath, bad teeth in my mouth, bad nerves; I am so nervous that I can't hold still." Because of his nervous condition he would get up at night and his wife would build a fire and make him some hot coffee which settled his nerves. If he strained himself, he would have nervous spells. He further testified:

> "There is constant pain behind my eye balls, keep my eyes red, and there is considerable pain behind my eyes all of the time, and then my ear drums get sore and I can't wash my face. I always have pains in there from my ear drums."

Of material importance is his evidence that he had some kind of catarrhal trouble in the left ear for about five years and his ear drums had been gone for about two years. On cross-examination the plaintiff stated that his ear had been bothering him since 1928 or for four or five years, and he admitted that the condition of his nose was no worse than when he was at work, although conditons in his head and nervous system were worse.

Now, the policy was not issued until June, 1929, so, according to the plaintiff's own testimony, most of his afflictions, and doubtless the cause of all of them, existed before he became insured, and the contract provided indemnity only in the event he should become disabled while insured under the policy. Drs. Wells, Castle, and Pickleseimer, who have sustained every one of the claimants in the several suits under this group insur-

ance policy which have reached this court, testified that they examined the plaintiff on March 2, 1932. Each of them says that the drum of his left ear was practically destroyed and that the septum in the nose was deviated, causing imperfect drainage, with resulting inflammation, pains, and nervousness. Otherwise the plaintiff was normal except for some bad teeth. The condition of his ear is, of course, permanent, but the difficulty in the nose could be easily remedied by a simple operation. One of these doctors testified that his right ear had a dullness of color. Expressing knowledge of the great noise around a running tipple, he expressed the opinion that it would be dangerous for one with defective hearing to work there. Yet, they admit that the noise was so great that one without any impairment of his hearing could hear very little other than the noise of the machinery.

Two of the company's doctors examined the plaintiff on March 14, 1932. They found him with some impairment in his ear, although not to the extent of that found by the other doctors. He had a temporary condition in his nose which could be corrected by treatment and without an operation. Another doctor examined him on May 2d and still another on August 22, 1932, which was shortly before the trial. They found only partial deafness in the left ear and some mild trouble in the nose. All of these doctors expressed the specific opinions that the plaintiff was neither totally nor permanently disabled.

The most that could be said for the evidence of the plaintiff is that his deafness in one ear creates a permanent impairment of his hearing. But there is a difference between permanent disability and total disability, as is discussed in Mutual Life Insurance Company v. Wheatley, 243 Ky. 69, 47 S. W. (2d) 961. It is to be remembered that the plaintiff was insured against a disability that would be both total and presumably permanent. In John Hancock Mutual Life Insurance Company v. Cave, 240 Ky. 57, 40 S. W. (2d) 1004, 1005, 79 A. L. R. 848, it is written:

> "The test of total disability * * * is whether the condition is such as to prevent the insured from transacting all kinds of business or work pertaining to his occupation or employment."

His occupation was that of a common, general

laborer, and, although it might be dangerous because of impaired hearing to work around a tipple, it would seem. apparent he was not totally disabled from laboring else— where or doing general labor of a different character.

While the plaintiff admitted he had had trouble with his ear before he became covered by the insur- ance, yet there is a scintilla of evidence that he is totally and permanently disabled to do the work of a common laborer. We are of the opinion that a new trial should have been awarded the defendant upon the ground that the verdict is not sustained by the evidence.

No other question raised is passed upon.

The judgment is reversed.