# Prudential Insurance Co. of America v. Bond.

### (Decided Dec. 21, 1934.)

46

TYE, SILER, GILLIS & SILER for appellant.

POPE & UPTON for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This is an appeal from a judgment obtained in the Whitley circuit court for total and permanent disability benefits by the appellee, George F. Bond, on his employee's certificate held under a group insurance policy issued by the appellant company to the Louisville & Nashville Railroad Company for the protection of its employees.

The plaintiff below, George F. Bond, was, at the time of becoming disabled, employed by the Louisville & Nashville Railroad Company at Corbin, Ky., as weighing clerk. His duties as such were to check up and record the incoming and outgoing cars passing daily through its eastern railroad yards. There is some con-

flict as to the extent of the labor (clerical and walking) required for the proper discharge of the duties of this position, but it is undisputed that Bond, as such official and employee, was required, in order to check up the numbers and character of freight of the many cars coming into the East Corbin yards (over and across which there ran some sixteen tracks, upon which these cars were variously run and placed), to spend daily several hours in walking through the yard and in crossing or climbing over or through the cars on one track to check the cars upon other tracks. In addition to such extensive walking and as a further part of his clerical duty of checking up and making a record of such cars, he was required to carry his record back to the station office, some distance away, and file his report thereof.

In 1927, the Louisville & Nashville Railroad Company, appellee's employer, took out a group insurance policy for the benefit of its employees with the appellant, Prudential Insurance Company of America, in which it was optional with its employees to severally participate. As one of this class, the appellee, Bond, elected to take advantage of its offered protection and secured an individual certificate thereunder, under which he agreed to the plan and terms of insurance prescribed by the group policy and signed an "authorization card" directing his employer company to retain and pay from his monthly wages a stated amount to his insurer for keeping paid up the monthly premium owing for his insurance, according to the terms of the group policy. Such policy was issued the railroad company for periods of three months, when the same was subject to renewal or failing which it lapsed. By the terms of the policy in question, under which Bond has sued and recovered a judgment against his insurer for total and permanent disability, it is provided that:

> "If the said employee, while less than sixty years of age, and while the insurance on the life of said employee under said policy is in full force and effect, *shall become totally and permanently disabled or physically or mentally incapacitated to such an extent that he or she by reason of such disability or incapacity is rendered wholly, continuously and permanently unable to perform any work for any kind of compensation of financial value during the remainder of his or her lifetime,* the amount of insurance payable at death from natural causes will

be paid to said employee in monthly installments during two years the first installment to be payable immediately upon receipt by the company of due proof of such disability or incapacity; in accordance with the provisions of said policy. The disability benefits will be granted subject to cessation, in accordance with the provisions of the policy, should such disability or incapacity prove to be *temporary and not permanent."* (Italics ours).

The evidence clearly shows without contradiction that on March 25, 1930, while the plaintiff was then an employee of the railroad company and while the said insurance policy was in effect and all premiums owing thereunder by plaintiff had been paid the company, he became totally disabled by reason of becoming afflicted with multiple neuritis, an affliction commonly referred to as "jake paralysis." The cause of this trouble it appears was that Bond on March 3, 1930, drank two bottles of Jamaica ginger taken, he states, as medicine for a bad cold while thinking it harmless. It further appears that on March 21st, following, he began to feel its hurtful effects and became so sick with "jake paralysis" by the 25th that he then became unable to work at all and was forced to leave his position of weighing clerk held with the railroad company and has not since held that position or worked for the company at all. It appears that for some months following, it is practically so admitted, he was totally disabled for the substantial performance of the duties of his position or for any work until about the —— day of January, 1931, following, when he reported back to the railroad company and asked that he be re-employed at his former job, stating that he believed himself then recovered of his disability and able to return to his work. Upon so applying, he was referred to the company's doctor for an examination *to determine if his condition had improved* as claimed, which was had and reported by the doctor as showing that his condition was then 95 per cent. normal. Bond was then put on the waiting list or "extra board" for reinstatement in his former position as soon as a vacancy or an opening arose. However, due to the continuance of the general business depression, causing the company to do away with the position of weighing clerk at Corbin, Bond has never been re-employed by it.

Failing to be re-employed, it appears that plaintiff secured during this period some seven other positions.

He first worked for a mercantile agency, soliciting and selling credit memberships among the merchants. He next worked as an electrician, which "job" called upon him to wire houses, put in electric fixtures, do considerable walking, climb ladders, and make dexterous use of his hands. Next he was employed at a battery station, where he assisted in selling oil and gas, and also washed for hire automobiles. Later, for several months, he went about over two or three counties selling electric refrigerators. In October, 1932, when he filed this suit for recovery of total and permanent disability benefits, he was working in the Federal Relief Organization at Corbin, his position calling for his visiting and investigating cases of the unemployed needy and requiring clerical work in reporting cases handled as well as much walking and standing on his feet. Further it appears that while so variously occupied, the plaintiff never filed claim with the company or notified it that he was in any wise disabled until he instituted this action in the Whitley circuit court, in October, 1932, against it, seeking recovery of $3,000 of the policy benefits provided for a condition of total and permanent disability.

By his petition he alleged that he had become totally and permanently disabled and physically incapacitated by reason of his drinking, for medicinal purposes, two bottles of Jamaica ginger on March 3, 1930, which caused him to become afflicted with multiple neuritis, rendering him wholly, continuously, and permanently unable to perform "any work of any kind of compensation of financial value during the remainder of his lifetime," and that "said disability was caused wholly by external, violent and accidental means" coming within the terms of his policy providing benefits for total and permanent disability and for which condition only (that is, for total and permanent disability) he prayed judgment against defendant for $3,000, the relief alleged provided by the policy therefor.

For the plaintiff there was offered expert testimony tending to show that his suffered attack of "jake paralysis" or multiple neuritis, based upon their examination of plaintiff and history of the case, had resulted in his total and permanent disability, by reason of its having so affected his hands and legs and created such a condition of his nerve ends as would prevent his ever again being able to substantially perform any labor requiring much walking or use of his hands for writing.

On the other hand, the evidence for the company was as to this, that a thorough examination made by them of plaintiff's condition clearly showed that he had recovered and that he suffered no atrophy of his legs or loss of the use of his hands for writing, as alleged, but that plaintiff's claim of loss of their use was shown to be feigned and untrue.

After issues were formed upon the pleading and proof, the cause was submitted under instructions of the court to the jury for a verdict, which was returned, finding for plaintiff (for total and permanent disability) in the sum of $2,000. Judgment was entered. This appeal is before us seeking its reversal.

We deem it unnecessary to here review and discuss in detail the numerous grounds assigned by appellant for reversal of the judgment in view of the conclusion we have reached that one of these grounds is in itself sufficient to require its reversal.

The applicable rule of law as to the definitive clause of the policy providing benefits for that condition of total and permanent disability which prevents the insured from engaging in any work, for any kind of compensation, etc., has been by this court repeatedly construed to mean, as a matter of law, a condition of total and permanent disability which prevents the person from doing all the substantial or material acts or duties required of such person in his business or occupation, rather than from doing any work of any character or value. To such effect see Travelers' Ins. Co. v. Turner, 239 Ky. 191, 39 S. W. (2d) 216; John Hancock Mutual Life Ins. Co. v. Cave, 240 Ky. 56, 40 S. W. (2d) 1004, 79 A. L. R. 848; National Life & Accident Ins. Co. v. Bradley, 245 Ky. 311, 53 S. W. (2d) 701; Columbia Casualty Co. v. McHargue, 246 Ky. 93, 54 S. W. (2d) 617; Henderson v. Continental Casualty Co., 239 Ky. 93, 39 S. W. (2d) 209; Prudential Ins. Co. v. Harris, 254 Ky. 23, 70 S. W. (2d) 949, 951; Equitable Life Assurance Soc. Co. v. Powers, 254 Ky. 770, 72 S. W. (2d) 469.

In the Henderson Case, supra, we held that the phrase "total and permanent disability of said member, which renders him unable to carry on or conduct any vocation or calling," the vocation of the insured not being designated, should be construed as meaning, if anything, the vocation or calling in which he might be engaged at the time he became disabled, and not *any*

vocation which he might be able to follow after he had been disabled.

In the later and well considered case of Prudential Insurance Co. v. Harris, supra, there was again before the court an insurance policy issued by this appellant company containing the same definitive clause as to total and permanent disability to engage in any occupation or to perform any work of any kind for compensation, etc. There the court, in determining what should be the construction given this clause, made an exhaustive review of the many authorities, both of this and other jurisdictions, which showed that they are not in accord as to the rules enunciated by them, but rather that they fall into three classes of construction. This court in *this* case decided to follow that group giving the clause a liberal interpretation which holds the definition to apply to the insured's occupation and construed its general words to legally mean *"an inability to do all the substantial and material acts necessary to the prosecution of the insured's business or that which is required of him in the performance of his occupation in the customary and usual manner."* (Italics ours.)

Further, the court said in the same case that:

> "In construing a contract of insurance, the court undertakes to do so according to its true character and purpose and in the sense in which the insured had reason to suppose it was understood. Continental Cas. Co. v. Linn, 226 Ky. 328, 10 S. W. (2d) 1079."

Accepting such as the proper construction of this language of the policy and that the court's instruction No. 2 so construing the clause was proper, the jury by another instruction given it was permitted to find for the plaintiff from the evidence not if it believed therefrom that plaintiff's disability was total if it prevented him from doing all the substantial or material acts or duties required of him in his business or employment, but if it believed that his condition was one of "total and permanent disability."

We are of the opinion that the evidence did not justify or support the court's instruction permitting the jury to find plaintiff's disability was one both total and permanent. We are constrained to so conclude in view of the fact that the evidence here clearly shows, as is also admitted by the plaintiff himself, that in January,

1931, following plaintiff's receiving his disability in March, 1930, he not only applied to the railroad company for reinstatement in his position, representing that he had then so recovered from his disability as to be able to perform all the substantial duties of his position, but further that such admitted and claimed recovery was verified when on examination he was found to have so fully recovered that his condition was then 95 per cent. normal. There is also the further proof, furnished by plaintiff's testimony, admitting that he has, since making his reinstatement application in January, 1931, to the railroad company, while waiting to be restored to his former position, been actively engaged at work in some seven other positions, the duties of which (or at least some of them) called upon him for both writing and walking or for the like use of his hands and legs as was required prior to his accident for the substantial performance of the duties of his position as weighing clerk.

In view of this evidence and these admitted physical facts, showing that throughout this period of something over two years intervening between his becoming disabled in March, 1930, and his bringing of this suit, he had so recovered from the first effects of his alleged total disability, caused by his paralysis, as to be able to substantially perform the like duties of the several occupations in which he had been and was engaged, even up to the time of filing this suit, it cannot reasonably be said that plaintiff's disability has remained or now is either total or permanent, with the result that whatever may have been the plaintiff's right to recover under proper pleadings for the temporary total disability with which he was affected during the first few months or up to January, 1931, he has no right to now recover the benefits for total and permanent disability.

Plaintiff, under the pleadings herein, has sought to recover only for and upon the grounds of total and permanent disability, and the court, responsive to such pleadings, gave an instruction allowing the jury to find for the plaintiff only in the event of its believing from the evidence that he was totally and permanently disabled. In so instructing the jury, we are of the opinion that the court erred, in that the admitted partial recovery of plaintiff made erroneous the court's instruction to find from such evidence that he was still totally and permanently disabled. Further, inasmuch as plaintiff

did not plead nor seek a recovery for either permanent partial or temporary total disability, the trial court was without right to give (and properly omitted giving) an instruction covering the right of recovery thereon, even though plaintiff might have been found entitled upon this evidence to recover therefor. The rule is elementary that instructions must be based on the pleadings or directly refer to issues made by them, and it is error to instruct the jury upon a question not put in issue by the pleadings. Also, it is alike well settled that the pleadings entitling the party to an instruction must also be supported by evidence sufficient to authorized the submission of the issue made and that, even though they authorize the giving of an instruction thereon, it is nonetheless error to so instruct without evidence supporting the issues made by them, as the court's duty is to confine his instructions to issues made by the parties in their pleadings that are supported by the evidence. Edge v. Ott, 151 Ky. 672, 152 S.W. 764; Knoxville Tinware & Mfg. Co. v. Howard, 219 Ky. 106, 292 S.W. 762; Bowlin v. Archer, 157 Ky. 540, 163 S.W. 477.

It results therefore that the court's instruction as given, to find for a total and permanent disability, was not authorized under the evidence when the physical facts showed that such was not the case and that the issue made by the pleadings on this question was not suported by the evidence. Neither could the court have properly given a further instruction authorizing a recovery by plaintiff for a temporary total disability, if justified by the evidence, since it was unsupported by the pleadings.

We conclude, therefore, for the reasons stated, that the court erred in failing to peremptorily instruct the jury to find for appellant on the evidence before it, which was not sufficient to support the averments of the petition seeking recovery for total and permanent disability, and from which only the one legitimate inference could be drawn that plaintiff was neither totally nor permantly disabled.

The judgment is upon such ground reversed and the cause remanded for further proceedings consistent with this opinion, with the direction that should the pleadings and evidence be again the same, the court is to peremptorily instruct for the defendant.

Whole court sitting.