**NEW YORK LIFE INSURANCE COMPANY, a corporation v. JOHN B. BIRD.**

12 So. (2nd) 454        January Term, 1943
March 16, 1943        Division A
Rehearing Denied April 5, 1943

*Charles Cook Howell* and *Charles Cook Howell, Jr.,* for appellant.

*R. C. Horne,* for appellee.

CHAPMAN, J.:

From a verdict and final judgment for the plaintiff below entered in the Circuit Court of Madison County, Florida, an appeal has been perfected to this Court. The suit involved disability benefit clauses of two life insurance policies. The involved clauses are identical in each policy and are viz:

"Total and Permanent Disability

"Upon receipt by the Company at its Home Office of due proof, as hereinafter provided, that the Insured has become totally disabled by bodily injury or disease so that he is and will be thereby wholly prevented from performing any work, following any occupation or engaging in any business for remuneration or profit, and that such disability has already continued uninterruptedly for a period of at least four months (such total disability of such duration being presumed to be permanent only for the purpose of determining liability hereunder), and provided that

"(1) such total disability began before default in payment of premium (or, in event of default, not later than the last day of grace), and that

"(2) such total disability began before the anniversary of the policy in which the Insured's age at nearest birthday is 60, and prior to the maturity of this policy, and that

"(3) such total disability did not arise from bodily injury or disease occurring before the insurance under this Policy took effect, and known to the Insured, but not disclosed in the application for the Insurance under this Policy, and that

"(4) such total disability has been continuous from the beginning of the period of disability claimed,

"The company will grant the following benefits:

"(a) Waiver of Premium.—The Company will waive the payment of each premium falling due after the commencement of such total disability and during its continuance, provided, however, that no premium shall be waived which shall have fallen due more than one year prior to the date of receipt at the Home Office of the written notice of claim, as hereinafter provided. The premium to be waived shall be the premium according to the mode of payment in effect when such total disability began. If such total disability began during the grace period and the Insured is in default the Policy will be restored if the Insured pays to the Company the premium in default with interest thereon at six per cent per annum when the claim is received and prior to approval of claim, shall be payable in accordance with the terms of the Policy, but will, if paid to the Company be refunded upon approval of such claim.

"(b) Income payments.—The Company will pay to the Insured the monthly income stated on the first page hereof ($10 per $1,000 of the face of this Policy) for the fourth and each succeeding completed month of such total disability during its continuance, provided, however, that no such monthly payment shall be made for any fractional part of a month of disability nor for any period more than one year prior to the date of receipt at the Home Office of the Company of written notice of claim. If, in the opinion of the Company, disability results from or is accompanied by mental incapacity, payments may, at the option of the Company, be made to the beneficiary in lieu of the Insured."

The declaration alleges that plaintiff, being 54 years of age, and while the said policy was in full force and effect, and no premiums thereon in default, became and was afflicted with the disease, ailment or condition commonly known as

cataracts in both of his eyes, and from the effects of said disease, ailment or condition plaintiff was and at all times since has been . . . totally disabled and totally and permanently unable to perform any work, follow any occupation or engage in any business for remuneration or profit; that proof of such disability was furnished by the plaintiff before default in any payment of premium under the policy; that the defendant received proof and paid the plaintiff the total permanent disability benefits from April 15, 1935, until January 15, 1941; that the plaintiff is disabled from the effects of such disease, ailment or condition as to be totally and permanently unable to perform any work, follow any occupation or engage in any business for remuneration or profit. Appropriate allegations for the recovery of two premiums paid under protest and a reasonable attorney's fee appear in the declaration.

Numerous pleas were filed to the declaration or counts thereof. Several pleas denied that the plaintiff: (a) was permanently disabled; (b) was totally unable to perform any work for remuneration of profit; (c) was totally unable to follow any occupation for remuneration or profit; (d) was totally unable to engage in any business for remuneration or profit; (e) was unable to perform any work for remuneration or profit; (f) was unable to follow any occupation for remuneration or profit; (g) was unable to engage in any business for remuneration or profit.

Plea No. 9 was to the effect that the policy sued upon provided that if at any time the insured should become able to perform any work, follow any occupation or engage in any business for remuneration or profit, no further income payments should be made; that prior to February 10, 1941, the insured became and was able to perform work, follow an occupation, and engage in business for remuneration or profit.

Counsel for appellant contend that any insured person, under the provisions of the policy *supra,* who is physically and mentally able to do some work, to follow some occupation, to engage in some business for remuneration or profit, cannot be considered totally disabled. The plaintiff, being

a pharmacist and disabled to follow his vocation, would be able to do some work, follow some occupation or engage in some other business, and accordingly counsel for defendant requested the trial court to charge the jury viz:

"The plaintiff cannot recover merely by showing that he is prevented, on account of disability, from engaging in the particular work, business or occupation in which he was engaged before he became disabled. The company's contract with him is to insure him against the effect of disability that is so complete that, on account of it he cannot perform any work, follow any occupation or engage in any business for remuneration or profit; and if you find that the plaintiff is physically and mentally able to engage in some work, business or occupation for remuneration or profit, you should return a verdict for the insurance company, even though you also find that the plaintiff is so disabled that he is prevented from engaging in the work, occupation or business in which he was engaged at the time his disability began." Refused.

"Total disability means inability on the part of the insured person to do substantially all of the material acts necessary to his engaging in any occupation, work, or business for remuneration or profit, taking into consideration his mental and physical capacity so to do if he wished." Refused.

"The insured person in policies like these is not totally disabled if, within the range of his normal ability, taking into consideration his education, training in work and his physical condition, he can earn wages or profit in some occupation, or can engage in some gainful occupation or employment in the customary manner as a workman or employee." Refused.

"The plaintiff cannot recover unless it appears from a preponderance of the evidence, that he was, before the institution of his suit, permanently and totally incapacitated from following any gainful occupation; and before he can recover he must show from a preponderance of the evidence that as a result of the injuries or disease described in the declaration he was totally and permanently disabled from following any gainful occupation." Refused.

"Even if you find that the plaintiff is physically unable to continue the regular work of his customary occupation, he is not totally disabled, if, with reasonable effort and success, he can engage in some other gainful occupation with reasonable regularity." Refused.

Counsel for appellant, to sustain the soundness of their position, cite cases from Alabama, Georgia, Tennessee, Kentucky, Texas, and the Federal Courts, but the following appear to be the leading authorities: Protective Life Ins. Co. v. Hale, 230 Ala. 323, 161 So. 248; Equitable Life Assur. Soc. v. Davis, 231 Ala. 261, 164 So. 86; Cato v. Aetna Life Ins. Co., 164 Ga. 392, 138 S.E. 787; Aetna Life Ins. Co. v. McCullagh, 191 Ky. 226, 229 S.W. 1033; United States Stove Corp. v. Aetna Life Ins. Co., 169 Tenn. 264, 84 S.W. (2nd) 582; Equitable Life Ins. Co. v. Powers, 254 Ky. 770, 72 S.W. (2nd) 469; Metropolitan Life Ins. Co. v. Tessier (Tex. Civ. App.), 70 S.W. (2nd) 209; Lumbra v. United States, 290 U.S. 551, 78 L. Ed. 492, 54 S. Ct. 272; Kantovich v. United States, 99 Fed. (2nd) 661; Wills v. United States, 97 Fed. (2nd) 775.

The Federal cases cited, generally speaking, consider contracts of insurance different from the provisions of the policies here involved. The Florida rule of interpretation is that the policy of insurance, like other contracts, must be liberally construed in favor of the insured so as not to defeat, without a plain necessity, the claim to the indemnity which the policy protects. See National Surety Co. v. Williams, 74 Fla. 446, 77 So. 212. Where there are conflicting clauses in an insurance policy, the one which affords the most protection to the insured will control. See Queens Insurance Co. v. Patterson Drug Co., 73 Fla. 665, 74 So. 807, L.R.A. 1917D 1091.

Counsel asserts that the plaintiff was not totally but partially disabled and contends that the evidence appearing in the record sustains their contention. It is also contended that the cited authorities establish the soundness of the rule of law and that the trial court committed reversible error in not instructing as requested. Requested instructions must be considered in light of or in connection with the other charges

given by the trial court. See Tampa Shipbuilding & Eng. Corp. v. Adams, 132 Fla. 419, 181 So. 403, 893; Carnley v. State, 143 Fla. 756, 197 So. 441.

The answer to the contention of counsel is found in the instructions or charges given by the trial court. Some of the pertinent ones are viz:

"In order that the plaintiff should be totally disabled and wholly prevented from performing any work or following any occupation or engaging in any business for remuneration or profit it is not necessary that it be proved beyond a reasonable doubt that the plaintiff is bedridden as a result of the injury or disease or reduced to a condition of complete helplessness, but he may be so disabled within the meaning of the law if he be so incapacitated by such injury or disease that he cannot within the range of his normal ability, taking into consideration his education, training and work, and his physical condition, earn wages or profit in his customary occupation or that he cannot engage in any gainful occupation in the customary manner,"

"Under the 9th plea the burden is upon the defendant to establish by evidence that prior to February 11th, 1941, the insured became and now is able to perform work, follow an occupation and engage in business for remuneration or profit; and, if not so established, the plea would fall in the plaintiff's favor."

"Under the terms of the contracts upon which he sues, the plaintiff is entitled to the disability benefits prescribed by the contract if he is both totally and permanently disabled. Even if he is disabled he is not entitled to recover unless such disability is total and also permanent."

"If you find that Mr. Bird has not since February, 1941, performed any work, followed any occupation or engaged in any business for remuneration or profit; this alone would not entitle him to a verdict. Before he can be entitled to a verdict in his favor you must further find that the reason why he has not is because he has been totally as well as permanently disabled. There, if you find that the fact that he has not performed any work, followed any occupation or engaged in any business for remuneration or profit is due

to some other reason than total and permanent disability, your verdict will be for the insurance company."

"In determining whether or not the plaintiff is totally disabled the proper question is not whether he can do substantially all of those things he did involving a gainful occupation; but whether or not he can substantially perform the duties of some occupation for which he is qualified."

"If you find that the plaintiff, within the range of his normal ability, taking into consideration his education, training and physical condition, can perform some work, follow some occupation or engage in some business for remuneration or profit, you should find a verdict for the defendant insurance company."

It is contended that the evidence shows that Mr. Bird is partially disabled, and, while he may not be able, because of defective vision, to follow the business or profession of a pharmacist, he is qualified to work, follow another occupation or engage in some remunerative business, and for this reason the plaintiff is not totally disabled. The testimony has been carefully studied and considered and the best answer to this contention is the testimony of Dr. Thompson, of Valdosta, viz:

"Q. If you put stronger glasses on him, as you have indicated that you did and as Dr. McDaniel indicated that he did, and forced him to see better, what would be the ultimate results of his trying to wear stronger glasses than you have on him now? A. He cannot wear them at all. He would go crazy. A man cannot put up with it. Q. Would it run him insane? A. I believe it would me. Do you think it would be a physical impossibility for him to wear stronger glasses than he has on? A. I have tried him and he cannot." . . .

"Q. To what extent do you consider that vision useful? A. He can use his vision to enable him to walk and to see members of his family and friends. He can look at the headlines of the newspapers for three or four minutes. He can peck around on the typewriter for four or five minutes or longer, but not very long because if he does he will have a headache."

". . . After the second operation I put glasses on him. I found that he was unable to wear glasses in comfort, for several reasons, and that he was unable to use one eye when he used the other one, and, eventually, it made him practically a one-eyed man. Q. Does that condition exist now? A. It exists today."

"A. . . . The eye is shaped something like an orange and if you take some of the fluid out of the orange you slacken the tension of the whole. There is a muscle on the outside and a muscle on the inside of the eye. The muscle on the inside turns the eye in and the muscle on the outside turns the eye out. However, you cannot turn one without the other. If you turn to the right the left eye must turn in when you turn to the right. In Dr. Bird's case, both eyes turned out. When he makes an effort to see the muscle must make an effort to turn the eyes in. Naturally that muscle pulls on the outside and it makes a small depression on the eye. Finally that becomes more or less fixed and you have a changed lens. The axis is changed and you have to change glasses. In his case, he will be forever changing glasses if he tries to see. He is constantly making an effort to turn the eyes in and it becomes very tiresome."

Questions five and six posed for adjudication by this Court have been carefully considered. When considering the record in its entirety, the conclusion is inescapable, that substantial justice was awarded in the lower court. The case has been ably argued, the briefs well prepared, and no legal rights of appellant appear to have been overlooked by its astute and industrial counsel. We fail to find error in the record.

Affirmed.

BUFORD, C. J., TERRELL and ADAMS, JJ., concur.