Terry A. PAPCZYNSKI, Plaintiff,

v.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY, a corporation, Defendant.

No. 89–76–Civ–J–16.

United States District Court, M.D. Florida, Jacksonville Division.

Jan. 26, 1990.

Tom B. Stewart, Jacksonville, Fla., for plaintiff.

Floyd L. Matthews, Jr., Jacksonville, Fla., for defendant.

## OPINION

JOHN H. MOORE, II, District Judge.

This Court held a bench trial of this cause on January 10, 1990, in Jacksonville, Florida. Both sides were represented by counsel. The following memorandum opinion shall constitute the findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a).

### Introduction

TERRY A. PAPCZYNSKI filed this lawsuit seeking benefits allegedly due him as a participant in an Employee Retirement Income Security Act (ERISA, 29 U.S.C. § 1001 et seq.) benefit plan. Specifically, PAPCZYNSKI claims that under the Disability Income Insurance Plan he possessed, he is entitled to certain Non–Occupational Disability Income benefits.

Plaintiff's claim for disability benefits arises out of an injury to plaintiff's foot which occurred on or about April 3, 1983 [1] while employed by Keydril Company, a

---

1. Although both parties have submitted proposed findings of fact which indicate that April 3, 1983 was the day plaintiff sustained his injury, Plaintiff's Exhibit 8, Deposition of Brian Gibbons, M.D., indicates that the injury occurred on February 4, 1983.

This factual inconsistency, however, has no effect upon the Court's determination of the issue before it today.

subsidiary of Gulf Oil Company. The defendant, CONNECTICUT GENERAL LIFE INSURANCE, issued the disability insurance policy to plaintiff's employer.[2]

CONNECTICUT GENERAL did pay to plaintiff Occupational Disability Income benefits in the amount of $17,223.50. The plaintiff now asserts that as a result of his injury he is "totally disabled" within the terms of the policy and is also entitled to certain Non–Occupational Disability Income benefits. The provision of the plan at issue states that:

> If an employee is so disabled that the Employee is substantially unable to perform the material duties of any occupation or employment for which the Employee is fitted by reason of education, training or experience, and if Monthly Income has been payable for 24 months the Insurance Company will continue Monthly Income payments during the period the Employee remains so disabled, subject to the Benefit Duration Limit for Employees who became employed on or after January 1, 1979.[3]

Plaintiff PAPCZYNSKI claims entitlement to such Non–Occupational Disability benefits alleging that his injury has left him totally disabled, thereby precluding him from obtaining employment for which he is "fitted by reason of education, training or experience."

CONNECTICUT GENERAL, however, argues that plaintiff is not totally disabled from performing any occupation for which he is "fitted" and has therefore denied his claim for Non–Occupational Disability benefits in accordance with the provisions of the policy.

## Findings of Fact

1. On or about April 3, 1983, plaintiff was employed by KEYDRIL COMPANY, a subsidiary of GULF OIL COMPANY, as a barge supervisor.

2. In his capacity as barge supervisor, plaintiff was responsible for the mechanical, electrical, maintenance and cleaning crews working on an offshore oil rig. He supervised approximately 100 workmen.

3. On or about April 3, 1983, plaintiff suffered a crush injury to his right foot while working on the barge. As a result of said injury, it was necessary for plaintiff to have the two small toes on the injured foot amputated.

4. On April 3, 1983 plaintiff, while employed by KEYDRIL COMPANY, was a beneficiary of a group disability benefit plan provided by KEYDRIL for its employees. Said Plan was purchased from Defendant CONNECTICUT GENERAL.

5. Plaintiff received a Jones Act settlement of $325,000 on September 10, 1985 for the injury he sustained.

6. At trial, plaintiff called as an expert witness Mr. Ed Rasco, an occupational therapist and vocational evaluator for persons with illnesses and injuries. Plaintiff was seen by Rasco for an evaluation. Rasco testified that plaintiff did not need rehabilitation and that plaintiff had "demonstrated that he's bright and perceptive and energetic and ambitious enough to go out and find work that he can do." Rasco further testified that the skills the plaintiff possesses from being a barge supervisor are transferable into other jobs. Rasco found through testing that plaintiff had a high average "I.Q. of 105 to 112 or 15, equal to about six and a half to seven out of ten other adults."

7. Defendant CONNECTICUT GENERAL called as an expert witness Dr. Frank Woodrich. Dr. Woodrich is a rehabilitation and employment specialist. He testified that the plaintiff was clearly capable of performing many jobs based on his prior work history and education. Specifically, Dr. Woodrich believes that the plaintiff is capable of attaining job placement in the areas of marketing, sales and management. Like Mr. Rasco, Dr. Woodrich testified that PAPCZYNSKI's prior skills acquired as

---

**2.** Connecticut General Life Insurance Company Disability Income Insurance Plan, Policy Number 22263–13, issued on August 20, 1971, effective on January 1, 1971.

**3.** Plan, page 7, paragraph 3.

barge supervisor were transferable to other occupations.

8. The Court makes the following findings of fact with regard to plaintiff's educational background:

a. Plaintiff graduated from high school in 1975.

b. Plaintiff completed three credit hours at Florida Junior College in Jacksonville, Florida, in 1976.

c. Plaintiff completed twenty-one credit hours at San Diego Community College in 1978. Plaintiff completed these hours while enlisted in the United States Navy.

d. Plaintiff completed forty-three credit hours at Jacksonville University in 1979. Plaintiff completed these hours with a Navy ROTC scholarship.

e. Plaintiff completed fifty-nine credit hours at the University of Central Florida from 1985 through 1987. He received both an Associate of Arts degree and a Bachelor of Arts degree in December, 1987. Plaintiff's B.A. was in legal studies.

9. The Court makes the following findings of fact with regard to plaintiff's employment history:

a. Plaintiff served in the United States Navy from August, 1975 to September, 1979.

b. Plaintiff was employed by Reading and Bates Drilling Company in Louisiana after his Honorable Discharge from the Navy. Plaintiff, after a short time with that company, was promoted to a supervisory position as barge captain.

c. Plaintiff was employed by Keydril as a barge supervisor from 1981 until the time of his injury. After his injury, Plaintiff was released from his employment because he was no longer able to perform his required duties.

d. Plaintiff became re-employed in January, 1984 with Pan Am World Services in Cape Canaveral. Plaintiff worked as a flight specialist on a tethered radar system until released from his duties as a result of a reduction in the work force.

e. Plaintiff worked as a paralegal in the State Attorney's Office from June, 1987 to November, 1988. He functioned in the capacity as paralegal, reviewing criminal case files, witness lists, subpoenas, and assisting attorneys as needed.

f. Plaintiff worked for the Florida Department of Transportation as a paralegal/investigator from February 1988 to present on a contractual "as needed" basis.

g. Plaintiff was employed by the Great Lakes Towing Company on a berthed tugboat from April until early June, 1989. He worked as a deckhand performing engineer room maintenance and painting.

h. Plaintiff became re-employed from June 6, 1989 through August 11, 1989 with Pan Am World Services painting and repairing aerostat balloons.

i. From August 11, 1989, through October 1, 1989, plaintiff continued his employment with Pan Am as a railroad track inspector.

j. Plaintiff has been employed by Pan Am as a flight specialist since October 1, 1989.

10. The Court makes the following findings of fact with regard to plaintiff's medical condition:

a. Plaintiff visited physician Gibbons from approximately March 8, 1983 through July 24, 1985. (Defendant's Exhibit 6)

b. Plaintiff submitted a disability claim with the Social Security Administration (SSA) which was denied on June 4, 1984. In its determination, the SSA stated that Plaintiff's medical records show that he did receive an injury to his right foot and that he responded well to surgery and treatment. The SSA found that Plaintiff's condition would not prevent him from working, that he failed to establish disability and, as a matter of law, he was not disabled. (Defendant's Exhibit 9)

c. Plaintiff did not seek medical treatment or see a physician concerning his medical condition from July 24, 1985 until June 26, 1989.

d. Defendant's Exhibit 10, Records from the Office of the State Attorney, contains an "Employee Emergency Information Sheet." Plaintiff executed said form on or about June, 1987, and answered "NONE" under the question of who plaintiff's physician was.

e. Plaintiff did not seek medical treatment for a period of almost four years, as such treatment was deemed not to be necessary by plaintiff.

f. Plaintiff's trip to physician Gibbons, after virtually a four-year hiatus, was made only months prior to the commencement of the instant action.

### Conclusions of Law

1. This matter is governed by the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (ERISA). Plaintiff's action is brought pursuant to 29 U.S.C. § 1132(a)(1)(B), the civil enforcement section of the ERISA statute.

2. The plaintiff must prove by a preponderance of the evidence that he is entitled to non-occupational disability benefits within the terms of the policy. See, e.g., Connecticut General Life Insurance Company v. Breslin, 332 F.2d 928, 934 (5th Cir. 1964).

3. The defendant asserts that factual determinations made by a fiduciary of an ERISA plan, specifically, CONNECTICUT GENERAL's review of plaintiff's claim for non-occupational disability benefits, are subject to an "arbitrary and capricious" standard of review. See, e.g., Denton v. First National Bank of Waco, 765 F.2d 1295 (5th Cir.1985); Dennard v. Richards Group, Inc., 681 F.2d 306 (5th Cir.1982).

4. The plaintiff, however, urges this Court to apply the de novo standard of review recently announced in Firestone Tire & Rubber Company v. Bruch, —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In Bruch, the United States Supreme Court held inter alia that a denial of benefits challenged under § 1132(a)(1)(B) must be reviewed under a de novo standard absent any clear indication that the plan vests with the plan fiduciary or administrator discretion to construe or interpret provisions of the plan itself. Id. 109 S.Ct. at 956.

5. In the instant case a claim was made by a plan beneficiary and such claim was denied by the plan administrator. The plaintiff asserts that he should be the recipient of, and is therefore entitled to certain benefits. However, the ERISA–Plan administrator, after reviewing the claim, decided that the beneficiary was not so entitled. The Court must now examine and interpret the plan provision in dispute to ascertain whether the plaintiff should receive Non–Occupational Disability Income benefits. The Court has conducted a de novo review of plaintiff's claim under the plan following the Bruch standard both throughout the trial and upon review of all the evidence submitted herein by the plaintiff and defendant.[4]

6. For the plaintiff to recover Non–Occupational Disability Income benefits he must establish that he is unable to engage in any and all conceivable gainful occupations for which he is reasonably fit by reason of education, training or experience, that such inability is a result of injury or illness, and that his medical condition requires a continuous course of treatment by a physician.[5]

---

**4.** Although defendants argue an "arbitrary and capricious" standard should be applied by this Court, the defendants have failed to specifically direct the Court to a provision in the plan through testimony at trial or evidence submitted therein that the plan administrator is vested with the discretionary authority to interpret eligibility provisions of the plan. There existed no clear governing language from the plan itself which would allow the Court to find that the plan actually conferred upon the administrator this discretionary authority to determine benefit eligibility. If the Court had found such unambiguous language was present, this Court would be constrained to apply the "arbitrary and capricious" standard of review. Firestone Tire & Rubber Co. v. Bruch, —— U.S. ——, 109 S.Ct. 948, 956, 103 L.Ed.2d 80; Jett v. Blue Cross and Blue Shield of Alabama, 890 F.2d 1137 (11th Cir. 1989). For this reason the Court reviews the denied claim under the de novo standard.

**5.** Plan, page 11, limitation number 7.

7. The Court has examined the policy and has interpreted the Non–Occupational Disability benefit provision to mean that after the expiration of the twenty-four month period where an insured has received Occupational Disability benefits (benefits which an insured is entitled to when a disability prevents the insured from engaging in his usual occupation), the insured is only entitled to Non–Occupational Disability benefits where the insured is *completely* unable to perform *any* occupation for which he is fitted by reason of education, training or experience.

8. The Court construes the plan provision at issue in favor of defendant CONNECTICUT GENERAL. There is no indication in the language of the policy that the plan was to provide any type of income guarantee benefits. Instead, the policy provides coverage for loss of earning capacity rather than actual loss of income and earnings.

9. Although the plaintiff has not been employed in any occupation since being injured which has provided him with equivalent income to that which he had realized prior to receiving his injury, the plaintiff has failed to establish that he is physically incapable of earning any income at all. To the contrary, plaintiff has demonstrated a continuous income stream.

10. Disability policies like the one at issue do not insure against loss of income nor do they guarantee specific income levels. Rather, this type of policy insures against an insured's incapacitation from working. *See, e.g. Continental Casualty Co. v. Carlisle*, 391 S.W.2d 98 (Tex.Civ. App.1965) (plan was deemed not to be a policy of indemnification against loss of income, but rather insurance against capacity to earn).

11. Courts have interpreted Non–Occupational Disability policies as providing benefits where the insured is prevented from doing any work for compensation while taking into account the insured's education, training and experience. Yet an insured who is capable of working in a field for which he is "fitted" is not entitled to Non–Occupational Disability benefits. *See, e.g., Equitable Life Assurance Society v. Neill*, 243 F.2d 193 (5th Cir.1957); *New York Life Insurance Company v. Bird*, 152 Fla. 532, 12 So.2d 454 (1943).

12. Plaintiff PAPCZYNSKI has not been under the care of a physician during the period between July, 1985 and June, 1989. Notwithstanding this, the plaintiff claims to have been disabled and is seeking benefits throughout that expanse of time. This critical fact has been neither contradicted at trial nor through evidence submitted by both parties.

In accordance with the terms of the policy, no benefits are due the insured during any period of disability in which the employee-insured is not under the care of a physician.[6] As stated earlier in the Court's Findings of Fact (section 10, subparts c-f) it is abundantly obvious to the Court that plaintiff has only reinstituted his visitations to a physician in anticipation of the instant litigation.

13. In conclusion, the Court finds that the plaintiff, TERRY A. PAPCZYNSKI, is not entitled to Non–Occupational Disability benefits. Plaintiff is obviously capable of attaining employment and has demonstrated his ability to do so to the Court. Certainly, these jobs have been dignified and in the opinion of the Court often more so than plaintiff's previous position as a barge worker. Furthermore, the plaintiff has since earned a college degree and has held numerous "skilled" positions. He is certainly more "fit" now for a multitude of careers than he was prior to being injured. The plaintiff has likewise failed to demonstrate to the Court that he is incapable of earning substantially similar income. Even assuming *arguendo* plaintiff did demonstrate to the Court that he was incapable of returning to the income level he had reached as a barge supervisor, such a showing would be absolutely irrelevant, for the policy does *not* provide for any *income guarantee* or for any job permanency. The subject policy simply does not insure against loss of income. The Non–Occupa-

---

**6.** Plan, page 11, limitation number 7.

tional Disability provision does not function as an income guarantee clause enabling the plaintiff to maintain a previously achieved income level in the event the plaintiff became disabled. Accordingly, the Court sustains defendant CONNECTICUT GENERAL LIFE INSURANCE COMPANY's denial of plaintiff PAPCZYNSKI's claim for Non–Occupational Disability Income benefits.

It is therefore now

ORDERED AND ADJUDGED:

1. That the Court finds for the defendant and against the plaintiff.

2. That the clerk of the court is hereby directed to enter a Final Judgment pursuant to Federal Rule of Civil Procedure 58 in accordance with this opinion.

DONE AND ORDERED.